MARGARET J. HYNES *vs.* EDWARD W. BREWER, administrator.

Suffolk.   January 15, 1907. — February 28, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Nuisance.   Ice and Snow.   Easement,* By prescription.

In an action by a woman for injuries from falling on ridges of ice on a highway caused by the freezing of water accumulated by a retaining wall and grading on land of the defendant alleged to be a nuisance, if it appears that the plaintiff was walking on a cross walk of a public highway at a reasonably slow pace, that she was looking ahead as she walked, that she had no reason to expect one side of the street to be more dangerous than the other and that she wore rubbers, and she testifies that on account of her physical condition at the time she was taking greater care than she otherwise would have done, the fact that she could see ice at the place where she fell as well as on other sidewalks in that vicinity is not conclusive against her, and she is entitled to go to the jury on the question of her due care.

A landowner has no right to maintain a retaining wall and a grading of his land which cause surface water to collect and to overflow upon a highway so as to create a nuisance by a dangerous accumulation of ice, and if he does so he is liable to a traveller on the highway who in the exercise of due care is injured by a fall caused by such accumulation.

If a landowner maintains a retaining wall and a grading of his land which cause surface water to collect and to overflow upon a sidewalk and a cross walk of a highway creating a dangerous accumulation of ice there, he is none the less liable for an injury caused by such nuisance because when he acquired the land the retaining wall and the grading already were upon it and both the wall and the surface of the ground have remained without change for fifty years.

A landowner cannot acquire by prescription a right to maintain a public nuisance.

TORT for personal injuries from falling on an icy cross walk near the premises of the defendant's intestate in Jamaica Plain on February 2, 1904.   Writ dated April 5, 1904.

In the Superior Court the case was tried before *Aiken*, C. J. The following facts among others appeared at the trial.

The plaintiff fell on a cross walk on Green Street, a public highway, where it is intersected by a private way called Lamartine Square.   The fee of Lamartine Square was in the defendant's intestate at the time the plaintiff fell.   The premises in question had been in the possession of the defendant's intestate since 1844 and the defendant's intestate had lived on the premises for many years before February 2, 1904.

The sidewalk on Green Street was lower than the premises of the intestate and there was a low retaining wall of rubble laid in mortar and water tight, extending along the entire front of the premises on Green Street and surmounted by a picket fence. At the corner of Lamartine Street the top of the wall was about a foot above the sidewalk on Green Street, and at Lamartine Square about a foot and a half above the sidewalk on Green Street. The general slope of Green Street is downward from Lamartine Street to Lamartine Square, there being a drop in that distance of three feet. The top of the wall was about six inches above the land inside it. The earth inside and immediately adjacent to the wall was a few inches higher than the surface ten feet inside the wall. Both Lamartine Street and Lamartine Square, as well as the surface of the premises in question, rise gradually from Green Street to the northeast on an average of five feet in one hundred, and there also is a general slope from the northwesterly corner of the premises to the southeasterly corner of the premises at the junction of Green Street and Lamartine Square.

The plaintiff in company with her sister had been to make a call on Chestnut Avenue, which leads off Green Street on the same side on which the intestate's premises were. In going to make this call she had proceeded along Green Street on the side opposite these premises. In returning she passed along the sidewalk on the side of Green Street adjacent to the premises in question. She described the accident as follows: " As I came along, just to Lamartime Square, I wasn't thinking of anything, looking straight ahead of me, when all of a sudden my left foot slipped forward, across me and I fell forward, over." She testified that it was at the crossing at Lamartine Square.

The evidence upon the issue of the plaintiff's due care, as well as upon the issue of the defendant's liability, is described in the opinion.

There was no evidence as to when or by whom the retaining wall was built, but it appeared that both the wall and the surface of the ground had remained without change for fifty years, and there was no evidence as to what the conditions were before that time. There was no evidence of the method em-

ployed when the wall was constructed, or to show whether earth was at that time thrown up against the wall.

A civil engineer called by the defendant testified that in his opinion the land in its natural condition had been cut away, and the wall built for the double purpose of holding back the earth on the premises and affording a foundation support for the fence, that in its natural original state the lowest part of the valley was at a point within the wall and upon the intestate's estate. A civil engineer called by the plaintiff testified that in his opinion the lowest part of the valley in the natural, original state of the land was outside the wall at a point now Green Street.

At the close of the evidence the defendant asked the Chief Justice to make certain rulings which he refused. Most of these have become immaterial because the exceptions to their refusal were not argued. The seventh instruction asked for, the refusal of which is referred to in the opinion, was as follows :

" 7. The owner or occupier of land is not liable for injuries to persons or property by reason of water flowing from his land in its natural condition, nor is he liable if by reason of such ordinary boundaries as picket fences or retaining walls made necessary by the lower grade of the adjacent street the surface water from his land escapes in larger volume at a given point than it would in the absence of such ordinary boundaries."

The Chief Justice in his charge to the jury, among other things, instructed them as follows:

" If, by the maintenance of the wall, or the grading of the ground, or by both causes in combination, an artificial channel was formed through which additional surface water flowed in a substantially greater quantity than it would otherwise flow, and the water was discharged upon the street by reason of such channel in substantially greater quantity than the natural drainage, and the quantity of ice was substantially increased thereby, on which the plaintiff fell, in the exercise of due care, then Mrs. Evans [the defendant's intestate] is responsible.

" There is no responsibility in this case unless you are satisfied that there was an artificial channel upon that portion of the premises in the vicinity of Green Street and that this artificial

channel caused a substantial increase in the flow of water to the southeast corner of the Evans estate, and a substantial increase in the discharge upon the cross walk at the entrance to Lamartine Square and that this substantial increase in the flow and discharge contributed to cause the ice at that point upon which the plaintiff fell, and by contributed, I mean formed part of the ice upon which the plaintiff fell. If the plaintiff has made out these propositions that I have stated as necessary, viz. due care, in the first place, on her part; second, the existence of an artificial channel by which there was a substantial increase in the flow of the water, and a substantial increase in the discharge of the water at the cross walk, which substantial increase in the flow, and discharge of the water, contributed to cause the ice on which the plaintiff fell, then there is a right to recover, and you will assess damages on the principles I have laid down. Unless the two propositions that I have laid down as essential are made out, there is no right, and your verdict will be for the defendant."

The defendant alleged exceptions, of which those that were argued are mentioned in the first paragraph of the opinion. The portion of the charge excepted to included the paragraphs quoted above.

*E. K. Arnold*, for the defendant.

*C. H. Donahue*, for the plaintiff.

SHELDON, J. Although many other questions were raised by the defendant's exceptions, his counsel have insisted upon only three contentions: That on all the evidence the plaintiff was not entitled to recover; that the judge at the trial should have given the seventh instruction asked for; and that the judge erred in that part of the charge relating to the contribution of water from the defendant's premises to the formation of ice on the cross walk where the plaintiff fell. We will consider these points in their order.

1. The jury had a right to find that the plaintiff was in the exercise of due care. There was evidence that she was walking at a reasonably slow pace, in a place where she had a right to be. She was looking ahead as she walked. She had no reason to expect one side of the street to be more dangerous than the other. She wore rubbers. She testified that she was taking

greater care by reason of her condition at that time. *Shipley* v. *Proctor*, 177 Mass. 498. The fact that she could see ice at this place as well as on other sidewalks in that vicinity cannot be conclusive against her. *Smith* v. *Lowell*, 6 Allen, 39. *Bennett* v. *Everett*, 191 Mass. 364.

The jury could find on the evidence that the effect of the defendant's intestate maintaining the retaining wall along Green Street in connection with the grading of her estate in that vicinity had been to alter materially the natural drainage of the land and to collect the surface water and that coming from rain and melted snow into an artificial pool, gathered and retained by the slope of her ground as graded and the water-tight structure of the wall, which, when sufficiently accumulated, would overflow in a considerable stream across the walk where the plaintiff fell; that this had happened shortly before the accident, and had resulted in a large accumulation of ice sloping from the junction of the fence and wall downward and outward to the street, this ice being about six inches thick at the thickest portion near the fence and wall, and being formed of ridges about a quarter of an inch thick, in successive layers. This would bring the case within the general rule that a landowner cannot, without being liable therefor, erect such buildings or structures upon his own land as will create a public nuisance in a highway. He has not the right to collect surface water into an artificial channel and thus to discharge it upon the highway. *Cavanagh* v. *Block*, 192 Mass. 63. *Shipley* v. *Proctor*, 177 Mass. 498. *Rathke* v. *Gardner*, 134 Mass. 14, 17. *Smith* v. *Faxon*, 156 Mass. 589. *Fitzpatrick* v. *Welch*, 174 Mass. 486.

Nor is it material here that this retaining wall was not built or the grading of the adjacent land done by the defendant's intestate. The liability is for maintaining the structures which bring about a public nuisance, and is the same whether she herself had them built, or received the property while they were standing upon it. *Leahan* v. *Cochran*, 178 Mass. 566. The fact that they have been maintained without change for fifty years gives no immunity. The right to maintain such a nuisance cannot be gained by prescription. Hammond, J. in *Leahan* v. *Cochran, ubi supra*, referring to *Holyoke* v. *Hadley Co.* 174 Mass. 424, 426, and *New Salem* v. *Eagle Mill Co.* 138 Mass. 8.

Accordingly a verdict could not have been ordered for the defendant.

2. It follows from what has been said that the defendant's seventh request could not have been given. It ignored the rule that a landowner has not the right to collect surface water artificially into a definite channel and so to discharge it upon lower land to its injury, or upon a highway, in such manner as to create a public nuisance. It is not necessary further to discuss this point. See *Daley* v. *Watertown*, 192 Mass. 116.

3. The instructions complained of were carefully guarded, and sufficiently protected the defendant's rights. It plainly appears, from so much as is stated of the charge, that the jury must have found that the defendant's intestate, by the structures which she maintained upon her land, caused a substantially larger volume of water to be accumulated and discharged, and thereby contributed to form ice upon the cross walk so as to increase substantially the amount of such ice. And it is to be noted that the bill of exceptions, though setting out all the material evidence, contains no direct evidence that any of the water which formed this ice came from any other source than that alleged by the plaintiff. However this may be, it is enough if the structures maintained by the defendant's intestate resulted in artificially collecting a body of water which discharged upon the street, and thereby caused the formation of a dangerous mass of ice. *Bates* v. *Westborough*, 151 Mass. 174, 181. *Curtis* v. *Eastern Railroad*, 98 Mass. 428, 431. Accordingly the instructions given are not open to criticism. See *Jackman* v. *Arlington Mills*, 137 Mass. 277, 284.

*Exceptions overruled.*