OSCAR D. ADAMS & another *vs.* NEW ENGLAND MAPLE
SYRUP COMPANY.

Hampden.    October 4, 1911. — January 3, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, & SHELDON, JJ.

*Adulterated Food.    Food*, Adulteration of.    *Sale,* Validity.

A sale of "blended maple sugar," which is a well known article in the trade in
which the parties to the sale are engaged, consisting in part of maple sugar and
in part of granulated sugar and having been ordered as such mixture, is not a sale
of adulterated food or of an imitation within the meaning of R. L. c. 75, §§ 16–18.

At the trial, before a judge without a jury, of an action for the price of certain
"blended maple sugar" sold and delivered to the defendant, where the defense
set up was that the sale was in violation of R. L. c. 75, §§ 16–18, the judge found,
on evidence warranting such findings, that the mixture which was ordered by the
defendant and delivered by the plaintiff was not adulterated food or an imita-
tion within the meaning of the statute.    It appeared by the evidence that at the
request of the defendant the packages containing the sugar sold were not marked
and were not labelled as containing a mixture or compound with the name and
per cent of each ingredient therein.    It was suggested that the defendant
might have sold some of the packages as pure maple sugar, thus causing de-
ception of the public which it was the object of the statute to prevent.    On this
point the trial judge found that a part of the sugar was resold by the defendant
to other persons, but that, even if such sales by the defendant were in any respect
unlawful, the plaintiff did not participate in them and was wholly indifferent as
to the use which the defendant might make of the sugar and had no knowledge
of any intention of the defendant to resell in violation of law, if any such inten-
tion existed.    *Held,* that under these findings neither the transactions of the
defendant after the sale nor the intention of the defendant at the time of the
sale could prevent the plaintiff's recovery.

CONTRACT for $358.52, the price of a quantity of blended
maple sugar manufactured by the plaintiffs and delivered to the
defendant.    Writ dated July 15, 1910.

The answer contained, among other matters, the following:

" And the defendant further answering says that the mer-
chandise declared upon and alleged to have been sold and deliv-
ered to the defendant was sold in violation of the statutes and
laws of said Commonwealth.

" And the defendant for further answer to the plaintiff's
amended declaration says that said merchandise alleged to have
been sold the defendant was adulterated within the meaning of
the statutes made and provided in such cases, because it was a

mixture or compound of maple sugar and a cheaper or inferior substance substituted in part for maple sugar, and that the package containing said merchandise, which was at the time a mixture or compound recognized as an ordinary article of food, or ingredients of articles of food, was not distinctly labelled as a mixture or compound with the name and per cent of each ingredient therein."

In the Superior Court the case was tried before *Schofield*, J., without a jury. Among other facts appeared the following:

The plaintiffs and the defendant made a contract through conversation and correspondence, by which the defendant ordered from the plaintiffs a quantity of blended maple sugar, which should contain as much maple sugar as the plaintiffs could put into the compound for the price agreed by the defendant to be paid, namely, ten and one half cents to eleven cents per pound.

The blended sugar was composed of maple sugar and white or granulated sugar. The compound was made by mixing both kinds of sugar with water, boiling off the water, and running the syrup into moulds in which it hardened into cakes, which were light in color. Blended maple sugar thus made is a well known article in the trade; it tastes better and is better to eat than maple sugar not mixed with white or granulated sugar. Maple sugar not mixed with white sugar is " apt to be black and strong." The plaintiff Adams testified that in making the compound he followed the defendant's direction and put into it as much maple sugar as he could to sell for the price which the defendant's president, one Marsters, said he was willing to pay.

The plaintiffs and the defendant were accustomed to handling maple sugar and syrup in trade and had had transactions between them involving blended sugar before the sale in question. The boxes did not bear any marks or any statement that the contents of them was a mixture with the name and percentage of each ingredient therein.

The judge refused to make various rulings requested by the defendant based on R. L. c. 75, §§ 16–18, the material portions of which are quoted in the opinion, and refused to rule that the merchandise sold and delivered by the plaintiffs was adulterated within the meaning of the statutes of the Commonwealth.

The judge made the following findings of fact and rulings of law:

"1. The court finds that the contract was for the sale of blended sugar, part maple and part granulated. The court finds that the meaning of the contract, which was made by conversation and correspondence, was that the plaintiff should put as much maple sugar into the blend as he reasonably could for the price agreed, ten and a half to eleven cents per pound.

"2. The plaintiff made and shipped thirty-four hundred and fifteen pounds, when he received an order, dated February 2, 1910, not to send any more. The court finds that the sugar was made and delivered in a manner which was a substantial performance of the contract. The breakage of the cakes in transit was somewhat excessive, but not enough to justify rejection. No evidence of the damage from breakage as a separate element was introduced.

"3. The defendant has disposed, by sale or otherwise, of about one half of the sugar shipped to it. It has about seventeen hundred pounds left in its possession. The court finds that there has been an acceptance and actual receipt sufficient to satisfy the sales act, St. 1908, c. 237, § 1.

"4. The plaintiff is entitled to recover the price at the rate of ten and a half cents per pound, amounting to $358.52, with interest from the date of the writ unless the sale was illegal.

"5. The defendant contends that the sale was in violation of the statute prohibiting the adulteration of food, R. L. c. 75, §§ 16 *et seq.* The court finds as a fact that the subject matter of the contract was a mixture of two kinds of sugar. It consisted of about thirty per cent maple sugar and about seventy per cent granulated sugar. This mixture was the substance or thing contemplated and contracted for by the parties, and the court rules that the sale of it as between the parties was not a sale of adulterated food or an imitation within the provisions of R. L. c. 75, §§ 16, 17 and 18.

"The sugar was shipped by the plaintiff in one-quarter pound cakes, packed in boxes, of which four contained sixty-eight to seventy pounds, and the rest contained thirty-five to thirty-eight pounds. At the request of the defendant, the boxes did not have any marks to indicate the quality of the goods. The plain-

tiff and the defendant were accustomed to handling sugar and syrup in trade. A part of the sugar shipped by the plaintiff was in fact resold by the defendant to other persons. If the resales by the defendant were in any respect unlawful, in violation of this statute, the court finds as a fact that the plaintiff did not participate in such resales.

" The court finds that the plaintiff was wholly indifferent as to the use which defendant as purchaser might make of the sugar. He had no knowledge of any intention on the part of defendant to resell in violation of the law, if such intention in fact existed. Each of the two kinds of sugar entering into the mixture was an article of food, and not injurious to health. Upon these facts, the court rules that the defense of illegality set up by the defendant fails."

The judge found for the plaintiffs in the sum of $369.86; and the defendant alleged exceptions, which after the resignation of *Schofield,* J., were allowed by *King,* J.

The case was submitted on briefs.

*H. W. Beal,* for the defendant.

*E. T. Broadhurst,* for the plaintiffs.

HAMMOND, J. The only question is whether the sale was in violation of R. L. c. 75, §§ 16–18. These sections so far as material read as follows: § 16: " No person shall . . . sell, within this Commonwealth, any . . . article of food which is adulterated within the meaning of section eighteen." § 17. " The term ' food ' as used . . . [in §§ 16–27, inclusive] shall include all articles, simple, mixed or compound, used in food or drink by man." § 18. " Food shall be deemed to be adulterated: 1. If any substance has been mixed with it so as to reduce, depreciate or injuriously affect its quality, strength or purity. 2. If an inferior or cheaper substance has been substituted for it wholly or in part. . . . 4. If it is in imitation of or is sold under the name of another article. . . . The provisions of this and the two preceding sections relative to food shall not apply to mixtures or compounds not injurious to health and which are recognized as ordinary articles or ingredients of articles of food, if every package sold or offered for sale is distinctly labelled as a mixture or compound with the name and per cent of each ingredient therein."

Was the sale in violation of this statute? The judge has found that the article called for by the contract was " blended sugar, part maple and part granulated," and that " the sugar was made and delivered in a manner which was a substantial performance of the contract." In other words the defendant ordered a mixture of maple and granulated sugar and the plaintiffs sent what was ordered. But none of the boxes in which the sugar was contained was " labelled as a mixture or compound with the name and per cent of each ingredient therein; " and therein, says the defendant, lies the illegality of the sale.

There is no doubt that maple sugar and granulated sugar are each a distinct article of food within the meaning of the statute, and so different that a contract for the sale of one would not be satisfied by a delivery of the other, much less by the delivery of a mixture of both. The contract in question called for neither kind of sugar in its pure state, but for a mixture; and this mixture did not bear the simple name of either kind even as between the parties. As stated by the judge, " the subject matter of the contract was a mixture of two kinds of sugar." And the commercial unit or article stipulated for was not either kind of sugar distinct from the other, but the mixture composed of both. Many an article composed of two or more ingredients is sold in the market as a unit food. A mince pie is generally understood to be a mixture of ingredients each of which may be regarded either as a distinct article of food or of drink, but no one would suppose the statute applicable to the sale of such a pie. The purchaser of the pie is not thinking of each particular ingredient, but only of the pie. To him not each individual ingredient but the mixture, the pie as a whole, is the unit, the one article of food. So in the present case the unit contracted for was the blended sugar, itself " a well known article in the trade." We think that under the circumstances disclosed by this case the ruling, that " the sale . . . as between the parties was not a sale of adulterated food or an imitation within the provisions of" the statute, was correct.

It may be urged that the object of the statute is to prevent fraud upon the public, as it doubtless is, and that the defendant may have sold these packages to some one as pure maple sugar, and that the failure of the plaintiffs to mark them, although

such failure was at the request of the defendant, contributed to the deception of such purchasers. Upon this part of the case the judge found that a part of the sugar was in fact resold by the defendant to other persons, but he further found that even if these sales were in any respect unlawful the plaintiffs did not participate in them; that the plaintiffs were wholly indifferent as to the use which the defendant might make of the sugar and had no knowledge of any intention on the part of the defendant to resell in violation of the law, if such intention in fact existed. Under these findings the subsequent transaction of the defendant, or its intention, would not prevent a recovery by the plaintiffs. *Graves* v. *Johnson,* 179 Mass. 53, and cases cited.

The case is simply a sale of an article of food, a mixture it is true of two other simple articles of food, but having a distinct name of its own and being known to the trade as a commercial unit of food and sold and bought as such. The sale of such an article under the circumstances disclosed by this case is not a sale of adulterated food or an imitation within the meaning of the statute.

*Exceptions overruled.*