GERTRUDE K. YOUNG *vs.* LOUIS KAPLAN.

Suffolk. April 2, 1929. — May 27, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Snow and Ice. Negligence,* Of one owning or controlling real estate. *Nuisance. Proximate Cause. Evidence,* Presumptions and burden of proof; Relevancy and materiality; Opinion: expert.

At the trial of an action of tort against the owner of a block of one-story stores in Boston for personal injuries resulting from a fall on an accumulation of ice on a sidewalk in front of one of the stores, the plain-

tiff introduced no direct testimony that the plaintiff fell on ice caused by water from the building nor that there recently had been snow on a part of the building which caused a formation of ice at that point; but relied on evidence which, he contended, showed that ice on which the plaintiff fell might have been formed from water dripping down the front of the store from snow accumulated on the roof due to the nature of the roof's construction. On the record, upon an exception by the plaintiff to the ordering of a verdict for the defendant, it was *held*, that

 (1) The circumstantial evidence did not establish a causal connection between the plaintiff's injury and water or snow coming from the defendant's building;

 (2) A finding would not have been warranted that the snow or ice on which the plaintiff fell came from the roof of the defendant's building.

The opinion of an architect, offered as an expert witness at the trial above described, as to whether any portion of the roof upon the stores was constructed in such a manner as to discharge snow, ice or other material upon the sidewalk, was *held* properly to have been excluded, the inquiry relating to a matter of common knowledge upon which expert testimony could not aid the jury and which in the circumstances was irrelevant.

TORT for personal injuries due to a fall resulting from a dangerous accumulation of snow and ice on a sidewalk in front of premises owned by the defendant on the southerly side of Commonwealth Avenue in the Brighton District of Boston. Writ dated January 15, 1926.

In the Superior Court, the action was tried before *Greenhalge*, J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*F. L. Norton*, for the plaintiff.

*E. J. Sullivan*, for the defendant.

SANDERSON, J. This is an action of tort to recover damages for personal injuries sustained by the plaintiff from a fall, alleged to have been due to a dangerous accumulation of snow and ice on a sidewalk in front of premises owned by the defendant, caused or permitted to remain thereon by the defendant's negligence. The judge ordered a verdict for the defendant with the stipulation that, if the order was wrong, judgment should be entered for the plaintiff in a specified sum. The case is here on the plaintiff's exceptions to that order and to certain rulings excluding evidence.

The plaintiff stated her contention to be that the accumulation of ice on which she fell resulted from a discharge from the defendant's premises caused by faulty construction of the roof. Her counsel in his brief states that the principal question raised is whether upon the evidence the jury could have found that the accumulation of ice on which the plaintiff fell was caused by a defective construction of the defendant's building, which permitted snow, ice or water to be discharged on the sidewalk on which she fell.

The testimony tended to prove that the plaintiff on December 26, 1925, while travelling easterly, down grade, on a sidewalk in front of a one-story block of six stores owned by the defendant, no part of which overhung the sidewalk, fell on snow and ice, receiving the injuries for which damages are sought. The roof of the stores was in three sections, each covering two stores, the elevation of the roof of each of the higher sections being from thirty-three to thirty-six inches higher than that of the next lower section. The front of the stores was topped by a parapet also in three sections, each extending in height about thirty inches above the section of the roof to which it was adjacent. There was a pilaster in front, between each two stores, extending above the roof and parapet. The roof of the building slopes to the rear where the gutters and conductors are, and the top of the parapet, thirteen inches in width, also sloped away from the street.

The plaintiff fell in front of the most easterly of the stores, which was located at the lowest grade. She testified that she noticed as she approached the place of the accident ice and snow on the sidewalk which was hubbly from impressions of foot marks; that the sidewalk was fairly clear, but as she neared one of the stores the sidewalk was fully covered with a hard, crusty formation consisting of snow and ice; that parts of the sidewalk looked different, and that near the building there was real ice as distinguished from ice and snow in other parts; that she fell in front of the store when walking nearer the window than the curbing, where the surface was not smooth; that the ice was thicker near the building. Her husband testified that he had noticed in the winter of 1923–1924 that the sidewalk was dangerous because of ice and

snow at all times after a storm; that when the side of the building was wet ice formed above the moisture and ran down on the sidewalk; that directly after the accident he saw snow and ice over the greater portion of the sidewalk; that he looked in front of the store near which the plaintiff fell and saw the same icy condition, sort of irregular in shape, more of the shape of a triangle with the apex or top at the base of the building at the foot of the pilaster where the elevation of the building changes, broadening out as it came down the hill; that on the day after the accident he saw snow in the corner of the roof where the elevation of the roof drops; that the snow was then banked into the corner about eighteen inches deep, where it would drop off the roof onto the sidewalk.

A witness called by the plaintiff, who occupied a shoe shop in the building westerly of the place where the plaintiff fell, testified that most of the time, especially in winter, water fell from the roof, causing dampness on the front part of the building; that twenty-four inches of the sidewalk from the block where the plaintiff fell was covered with snow and ice three or four inches thick, extending all the way down from the second store above that of the witness. Another tenant of the building testified that on cold days as soon as the snow was off the ground water would always drip from the window, coming down on the sidewalk; that on rainy days it generally ran down from the roof to the sidewalk, and on snowy days it stayed on the roof and as soon as the snow melted a little it would start to drip down on the sidewalk. There was also testimony tending to show that several times during 1923 and 1924 the wind had blown snow toward the parapet, and piled it up against or near the parapet where the roof makes a drop.

An architect testified that a change could be made in the construction of the parapet, that would affect the drifting or blowing of snow over the front of the roof at the corner, by making a step-down in two units so that the elevation of the parapets would not change at the place where the elevation of the roof changes; that this would shield the corner which is now exposed, and that the same result might be accomplished by constructing a scroll or volute at the place where

the higher parapet meets the lower, the effect of which would be to bank the snow behind it and prevent its escape.

Between the store in front of which the plaintiff fell and the nearest place where a change in the elevation of the roof and parapet occurs are two shops. No one testified that the ice on which she fell was caused by water from the building, nor that there was or recently had been snow on the parapet which caused the formation of ice at that point, and the circumstantial evidence did not establish a causal connection between the plaintiff's injury and water or snow coming from the defendant's building. The source of the water which formed the area of ice triangular in shape, to which the plaintiff's husband testified, did not clearly appear, nor was it proved that the ice to which a tenant of the shoe shop testified came from the roof of the building.

Upon the evidence the jury would not have been justified in finding that the snow or ice on which the plaintiff fell came from the roof of the defendant's building, even if it be assumed that weather conditions were such that snow might have accumulated on the roof or parapet, melted and run down a pilaster, and formed ice upon the sidewalk. In this state of the evidence it was unnecessary to consider whether the building could have been found to be faulty in construction, or whether the accumulation of snow in the corners of the roof might create a dangerous condition on the sidewalk, or whether the roof could have been found to be so constructed as to discharge snow or water on the sidewalk, or whether the owner could be liable in a case of this kind where the building is let to tenants.

The architect called as a witness, having testified that at two points in the façade of the building where the parapets and roof simultaneously drop the parapet has no protection against the snow being blown over it, was asked, "If that occurred and the melting subsequently occurred, what would take place?" To the exclusion of this question the plaintiff excepted, and offered to prove that the water or melting snow would drop down the front of the building and create a nuisance. The plaintiff then introduced a section of the building laws of Boston providing: "No part of any roof shall

be constructed in such a manner as to discharge snow, ice or other material upon a public street or alley." The same witness was then asked, "Do you know whether any portion of the roof which you observed upon the stores concerned in this accident was constructed in such a manner as to discharge snow, ice or other material upon Commonwealth Avenue?" The plaintiff excepted to the exclusion of this question, and offered to prove that the portions of the roof and parapets where the elevations are changed are so constructed as to discharge melting snow and water on the street in front thereof. The inquiries related to matters of common knowledge upon which expert testimony could not aid the jury. They also related to matters which have become immaterial because of the ground on which the opinion rests.

*Exceptions overruled.*