MARY H. MOSHER *vs.* CAPE ANN SAVINGS BANK.

ALLAN J. MOSHER *vs.* SAME.

Essex.    April 9, 1941. — September 8, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Snow and Ice. Proximate Cause. Negligence,* One owning or controlling
real estate. *Nuisance. Way,* Public: nuisance.

Evidence left it conjectural whether ice on which a pedestrian fell on a
cross walk of a public street near the curb was formed from water
from a conductor leading down from the roof of an adjacent building
and under the sidewalk and emptying into the street through an out-
let in the face of the curb close to the place of the fall, or was due to
any act or omission of the owner of the building.

TWO ACTIONS OF TORT.    Writs in the Superior Court
dated March 10, 1938.

Verdicts for the defendant were ordered by *Brogna,* J.
The plaintiffs alleged exceptions.

*W. G. Clark,* (*M. I. Bernstein* with him,) for the plaintiffs.

*J. W. Sullivan,* for the defendant.

QUA, J.    These are actions for personal injury to Mrs.
Mosher, herein called the plaintiff, and for consequential
damages to her husband, sustained as the result of a fall
by Mrs. Mosher on ice at the corner of Middle and Pleasant
streets in Gloucester at about 4:30 P.M. on February 26,
1938.    It is contended that the ice formed at the point
where the plaintiff fell in consequence of the construction
and condition of a water conductor on the outside of the
defendant's building located at the southwesterly corner of
the two streets and of a cast iron pipe leading from the
conductor.

The only substantial question of law is whether there was
any evidence to go to the jury that the plaintiff's fall was
proximately caused by ice formed from water coming from
the conductor or from the cast iron pipe.    See *Field* v.
*Gowdy,* 199 Mass. 568; *Crafts* v. *McCobb,* 303 Mass. 172,

174; *Harrison* v. *Poli-New England Theatres, Inc.* 304 Mass. 123; *Blanchard* v. *Stone's Inc.* 304 Mass. 634, 639.

Middle Street ran east and west, and Pleasant Street ran north and south. The wall of the building extended to the sidewalk on each street, and each sidewalk sloped toward the curb. The curb was rounded at the corner. The conductor, leading down from the roof, was located on the Middle Street side of the building about two feet from the corner. Water from it passed under the Middle Street sidewalk through the cast iron pipe whose outlet was in the outer face of the curbstone on Middle Street about two inches west of a line painted on the surface of that street to indicate the westerly side of a "crosswalk." Middle Street sloped easterly toward Pleasant Street, and Pleasant Street sloped toward the south. There had been an eight inch fall of snow, ending before sunrise of the day of the accident.

The plaintiff testified that she was walking up Pleasant Street in a northerly direction at "about the middle" of the sidewalk adjacent to the defendant's building; that just as she stepped off the sidewalk to cross Middle Street she slipped on some ice "very close to the curbing"; that "there was ice all around where she fell"; that the cross walk where she fell was icy; that as she walked by the building at the corner she was well out on the sidewalk toward the curb; and that she was bearing to her right (east) a little as she went across the street. A witness employed by the defendant at the building testified that it was drizzling intermittently on the day of the accident; that the temperature was above freezing until 4 P.M.; that at 3:30 P.M. the cross walk was slushy; that around the outlet of the cast iron pipe in the curbing there was a mixture of snow and rain and it was slushy; that between the sidewalks on Middle Street at the cross walk and up to the curb at the outlet "there was a mixture of snow and rain, slushy and slippery"; that on the day of the accident water was discharging out of the cast iron pipe through the curbstone; that it flowed out four or five inches into the street from the curb and then because of the slope was diverted in an easterly direction across the cross walk, following the curb, to Pleasant Street; that the whole

square there, including the part between the marked lines was "all slush and snow, and trodden-down snow"; that "the condition of the surface was the same where the outlet was as all over the square"; that it "was no different there from what it was in all the surrounding streets"; that on the morning of the accident water came out of the curb outlet, but not in much volume because it wasn't raining hard; that it was a fair statement that the water would come out four or five inches from the outlet and then it would "meet the slope" of the street and be diverted and follow the curb around into Pleasant Street; that at 3:30 P.M. it was "pretty sloppy" all the way around the curb "where you drop off into the gutter."

There was further testimony that the cast iron pipe that ran under the sidewalk was broken at the wall of the building near its connection with the conductor that ran down the building, and that water could and sometimes did leak from the conductor and from the cast iron pipe and spread out "fan-like" and flow across the surface of the sidewalk to the curbing at the cross walk; but there was also evidence that such leaking would occur only when there was a considerable flow of water in the pipe, and there was no substantial evidence that any water was observed leaking and flowing over the surface of the sidewalk on the day of the accident; nor was there any evidence that any such water would reach the spot where the plaintiff fell, or that it would not follow the grade of the gutter around the curbing in the same manner as water coming from the outlet in the face of the curbing.

There was also evidence that the highest temperature on the day of the accident was 32°, taken in the shade, that the day was partly cloudy with some sunshine, and that there was no rain or drizzle.

In our opinion the evidence fell short of that which would be required to support a finding that ice at the spot where the plaintiff testified that she slipped came from water flowing from the defendant's conductor or cast iron pipe, or that conditions at that spot were materially affected by any act or omission of the defendant. The jury could select what

evidence they would believe, but they could not so wrest the testimony from its context as to distort its meaning. *Carlen* v. *Gaw*, 292 Mass. 398.   There was no evidence of the existence of any continuous ice from the defendant's conductor or from the cast iron pipe to the place where the plaintiff slipped.   There was no evidence as to when water had last been seen coming from the outlet of the pipe on the day of the accident, except that some was seen in the morning.   There was no evidence that at any time any water from the conductor or pipe flowed farther up the street side of the gutter than four or five inches from the curb.   Although the plaintiff testified that she slipped "very close to the curbing," there was no evidence that she stepped down as close as four or five inches.   There was a great deal of evidence of snow and slush all over the streets, and that Middle Street sloped in a way which might cause water to flow from almost any part of it over the place where the plaintiff slipped.   Water may also have flowed down the side of Pleasant Street to the gutter at the corner.   The gutter may have been filled with water that never came from the defendant's premises.   The plaintiff herself testified that there was ice "all around where she fell."   The most that can be said is that there was evidence that the defendant did at times divert water in a channel from its premises to the street and that water so diverted might possibly have contributed to form ice where the plaintiff slipped, but a finding that this was actually the fact in the presence of so many other probable sources would rest upon nothing better than conjecture.   The case is to be classed with *Lucas* v. *Thayer*, 263 Mass. 313, *Bailey* v. *Blacker*, 267 Mass. 73, *Young* v. *Kaplan*, 267 Mass. 152, and *Jefferson* v. *L'Heureux*, 293 Mass. 490, 492–495.

*Exceptions overruled.*