Eleanor G. Johnson *vs.* Clayton B. Stoddard & another.

Stanley W. Johnson *vs.* Same.

Middlesex.   October 9, 1941. — October 31, 1941.

Present: Field, C.J., Donahue, Qua, Cox, & Ronan, JJ.

*Food. Negligence,* Food. *Practice, Civil,* Costs.

A finding of negligence of a manufacturer of an article of food toward a consumer of the article who became ill through germs of paratyphoid transmitted from handling by a "carrier" of that disease in the employ of the manufacturer, was not warranted where the evidence showed that neither the manufacturer nor the employee knew or had reason to know of the employee's condition until after the article was purchased.

The operation of G. L. (Ter. Ed.) c. 94, § 4, forbidding the use of unwholesome ingredients in bakery products is limited to the use of materials in the manufacture of such products and does not govern the handling of the finished products.

A violation of G. L. (Ter. Ed.) c. 94, § 4, by a manufacturer of a bakery product which, when sold, was contaminated by paratyphoid germs was not proved by evidence that did not show that tainted ingredients were used in the manufacture but rather merely that the contamination was due to handling of the finished product.

One of two defendants in an action, who joined with his codefendant in a single answer setting up a common defence, was not entitled to have costs taxed to him separately upon the direction of a verdict in his favor where his codefendant also prevailed but not until a later stage of the action.

TWO ACTIONS OF TORT. Writs in the Superior Court dated July 14, 1937.

The actions were tried together before *Greenhalge,* J. There were verdicts for the plaintiffs against the defendant Clayton B. Stoddard in the sums, respectively, of $300 and $500, and the judge reported the cases as to that defendant.

In each action the defendant Clement B. Stoddard, after the trial judge had ordered a verdict for him, moved for the taxation of costs. The motions were denied by *F. T. Hammond,* J., and that defendant filed and prosecuted a bill of exceptions to such denial in the action by Eleanor G. Johnson, it being agreed that the decision of this court in that case on the matter of costs should be "decisive of bill of exceptions" filed by him and allowed but not prosecuted in the action by Stanley W. Johnson.

*E. M. Dangel,* (*E. Scally, L. E. Sherry,* & *G. A. Goldstein* with him,) for the defendants.

*W. D. Regan,* for the plaintiffs, submitted a brief.

RONAN, J. The plaintiff in the first case sued the defendants Clayton B. Stoddard and Clement B. Stoddard, as manufacturers of bakery products, to recover damages on account of being made ill as a result of eating cream puffs which, she alleges, were unfit for human consumption because they were infected with dangerous germs which came from one of the defendants' employees. The plaintiff in the second case, the husband of the plaintiff in the first case, ate some of these puffs, was made ill and sued these defendants to recover damages for his injury. At the close of the evidence, the judge directed a verdict in each case in favor of the defendant Clement B. Stoddard. The judge denied the motions of Clayton B. Stoddard to direct verdicts for him. The jury returned a verdict in each case against Clayton B. Stoddard, hereinafter called the defendant, and the judge reported the cases to this court upon a

stipulation that if they were properly submitted to the jury then judgments are to be entered in accordance with the verdicts, otherwise judgment in each case is to be entered for the defendant Clayton B. Stoddard. The defendant Clement B. Stoddard has excepted to the refusal of the judge to grant his motion that costs be taxed in his favor.

There was evidence that the plaintiff in the first case purchased four cream puffs for herself and her husband on April 1, 1937, at a store in Lowell which procured bakery products, including cream puffs, from the defendant. The plaintiffs ate these puffs on the day they were purchased. There was nothing wrong in their appearance and taste. One of the plaintiffs became ill on April 8, 1937, and the other on April 10, 1937. It could be found that they were suffering from paratyphoid "B," a dangerous, infectious and highly communicable disease which may be transmitted to another by eating some article that has been handled by a person who has this disease. There were twenty-one or twenty-two cases of this disease in Lowell in April, 1937, and an investigation was made by the health authorities to determine its source.

A physician, who was the director of health and hygiene of the board of health, testified that, just prior to May 1, 1937, he learned that an employee of the defendant was infected with paratyphoid "B," and he was suspicious that this employee might be a carrier as he showed a positive bacteriological test for the organism and as fifteen persons had become ill after eating food which he had handled. This employee was twenty-two years of age; he had been employed for five years by the defendant and during that time was never sick. He had been immunized for this disease in 1936 by three inoculations, which is considered to be the most modern method of producing immunity to this disease, and such immunization is valuable up to seven years. The employee did not show much of any symptomatic reaction other than temperature and he was ill only so far as his temperature would show above normal. No one, not even an expert, could determine by looking at this

employee whether he had this particular malady. It is necessary to make many bacteriological, laboratory and microscopic tests, requiring six or eight hours, in order to ascertain if a person is a carrier of this disease. From May 1, 1937, until August 3, 1937, the medical and bacteriological experts had only a suspicion that the employee was a carrier; on August 3, 1937, they had not formed an opinion that he was a carrier. The witness regarded the employee as a transient carrier who might transmit an organism for a day or a week or might never do it again. A carrier may be seriously or mildly ill with this disease. He had no opinion as to how long prior to May 1, 1937, the employee was a carrier.

The chairman of the board of health of the city, a physician and surgeon, in answer to a hypothetical question which assumed that the employee was working for the defendant on April 1, 1937, when the puffs were purchased, that the plaintiffs became ill on April 8 and 10 respectively, and that tests made on May 1, 1937, showed that this employee had paratyphoid "B," testified that in his opinion the employee was the source of infection which caused the illness of the plaintiffs. But he further testified that he would have to assume that the employee had the disease on April 1, 1937, and that it was very likely that this employee was a temporary carrier who "might have the disease on one day and might not have it again for a period of time or might never have it again."

The defendant on April 29, 1937, was informed by a physician who was apparently connected with the State department of health that he was suspicious that the employee had this disease, and the defendant immediately laid off the employee.

The question before us is whether this evidence is sufficient to warrant the verdicts for the plaintiffs. *Horowitz* v. *State Street Trust Co.* 283 Mass. 53. *Comstock* v. *Soule,* 303 Mass. 153. The manufacturer of an article of food for human consumption owes a duty to the ultimate consumer to exercise care in its preparation and output in order that his product will not cause injury to the consumer, and the

degree of care that must be exercised is commensurate with the danger to the life and health of the consumer that might probably result from the lack of such care. *Wilson v. J. G. & B. S. Ferguson Co.* 214 Mass. 265. *Sullivan v. Manhattan Market Co.* 251 Mass. 395. *Flynn v. First National Stores Inc.* 296 Mass. 521. *Bergantino v. General Baking Co.* 298 Mass. 106. We assume without deciding that the evidence would warrant an inference that the employee was a carrier of paratyphoid "B" at the time these cream puffs were manufactured by the defendant, and that in some way germs from him were imparted to the puffs. But there is no evidence that the defendant knew or reasonably could be expected to know that one of his employees was in such physical condition that it was dangerous to permit him to handle articles of food. Indeed, the testimony is to the contrary and clearly demonstrates that it was not until April 29, 1937, that the defendant had or should have had any knowledge concerning this condition of the employee.

In the next place, the evidence would not support a contention that the employee on April 1, 1937, knew or ought to have known that he was afflicted with a dangerous disease which might be transmitted to others through the foodstuffs that he handled, and there is nothing upon which liability can be imposed upon the defendant on the ground that this employee was negligent. *Richenbacher v. California Packing Corp.* 250 Mass. 198, 203. *O'Brien v. Louis K. Liggett Co.* 282 Mass. 438, 441.

The plaintiffs in an attempt to prove negligence of the defendant rely upon a violation of a particular statute. This statute, G. L. (Ter. Ed.) c. 94, § 4, in so far as material, provides that "There shall not be used in bakery products or in the ingredients thereof any ingredient or material, including water, which is spoiled or contaminated or which may render the product unwholesome, unfit for food or injurious to health, nor shall there be used in any bakery product any ingredient likely to deceive the consumer or which lessens the nutritive value of such product . . . . Said ingredients and the sale and offering for sale of said

products shall otherwise comply with sections one hundred and eighty-six to one hundred and ninety-five, inclusive." The purpose of the statute is to require the manufacturer to use only pure and wholesome materials and such as will not be injurious to health. The materials that were used by the defendant in making the cream puffs are disclosed by the record, and there is no contention that the use of any of them was contrary to the statute. The manufacture of a product composed of such materials did not violate this statute. The primary concern of the statute is to insure the wholesomeness of the finished product by the use of proper ingredients. It deals specifically with the ingredients as distinguished from the manufactured product. *Adams* v. *New England Maple Syrup Co.* 210 Mass. 475. *Newhall* v. *Ward Baking Co.* 240 Mass. 434. The plaintiffs contend that some of these ingredients were impregnated by disease germs which emanated from the employee. The record does not show that the employee had any duties in reference to mixing the ingredients or cooking the compound. He was a baker's helper, and handled certain materials used in manufacturing and some of the finished product. The operation of the statute is limited to the use of materials in the manufacture of bakery products. It does not govern the handling of the finished product. If, as the plaintiffs contend, the statute prohibits the use of materials that contain disease germs, then the plaintiffs are met with the difficulty that the evidence does not show that it was more likely a case where the unfitness of the product when sold was due to the use of such materials rather than a case where a product which was wholesome when manufactured had become tainted on account of being handled by the employee. The statute carries a penalty for its infraction and like all criminal statutes must be strictly construed. *Commonwealth* v. *Beck*, 187 Mass. 15. *Baer* v. *Tyler*, 261 Mass. 138. The burden was upon the plaintiffs to show that the ingredients used by the defendant did not comply with the statute. This burden has not been sustained. *Smith* v. *First National Bank in Westfield*, 99 Mass. 605. *Doyle* v. *Continental Baking Co.* 262 Mass. 516, 518–519.

*Mellace* v. *John P. Squire Co.* 306 Mass. 515. *Mosher* v. *Cape Ann Savings Bank,* 309 Mass. 512.

We now pass to the exceptions taken by the defendant Clement B. Stoddard to the denial of his motion that costs be taxed in his favor in the action which the plaintiff in the first case brought against him and Clayton B. Stoddard and in which a verdict had been directed in his favor. In that action both defendants joined in a single answer which set up a common defence. Consequently, this defendant does not bring himself within the rule that when an action is brought against several tortfeasors who set up their respective defences in separate pleadings, they are entitled to separate bills of costs if they severally prevail. *Upton* v. *Pratt,* 106 Mass. 344. *O'Connell* v. *Bryant,* 126 Mass. 232. But where the defendants have not severed their defences in separate pleadings, they are not entitled to separate bills of costs simply because they have finally prevailed at different stages in the litigation. The plaintiff is not to be taxed twice for expense incurred by the defendants for their mutual benefit. *Peabody* v. *Minot,* 24 Pick. 329. *Mathers* v. *Cobb,* 3 Allen, 467. This is not a case where some of the defendants are held liable while others are found to be free from liability. *Durgin* v. *Leighton,* 10 Mass. 56. *West* v. *Brock,* 3 Pick. 303.

In accordance with the stipulation contained in the report judgment is to be entered in each case for the defendant Clayton B. Stoddard, and the exceptions of Clement B. Stoddard are overruled.

*So ordered.*