THOMAS J. WALSH, executor, *vs.* ANNA SCHWOERER,
executrix.

Suffolk.   November 6, 1942. — December 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Snow and Ice. Nuisance. Way,* Public: nuisance. *Evidence,* Presump-
tions and burden of proof.

Evidence, while showing that a pedestrian fell on a public sidewalk at
or near a place where a water conductor from an adjacent building
might cause ice to form and that ice was observed at that place the
next day, left as matters of conjecture whether the ice had been there
at the time of the fall or whether, if it had been there, the pedestrian
fell from slipping on it rather than from slipping on newly fallen snow
or from some other cause; and he was not entitled to recover from
the owner of the building for injuries sustained in the fall.

TORT by Ellen T. Walsh for personal injuries alleged to
have been sustained in falling upon ice upon a public side-
walk. Writ in the Superior Court dated October 2, 1940.

Upon the death of the plaintiff, the executor of her will was substituted as plaintiff. The action was tried before *Warner*, J., who denied the defendant's motion for a directed verdict and, after a verdict for the plaintiff, denied the defendant's motion for the entry of a verdict in her favor under leave reserved. The defendant alleged exceptions.

*D. Stahl*, for the defendant.

*H. J. Williams*, for the plaintiff.

QUA, J. At about 10:30 A.M. on February 7, 1939, the original plaintiff in the action (since deceased and now represented by her executor, but for convenience called herein the plaintiff) fell on the sidewalk in front of premises owned by the defendant's testator, on Gay Head Street in Boston. There was evidence that a water conductor from the piazza roof connected at its lower end with a horizontal pipe which ran to the inner edge of the sidewalk near a gate in such a manner that water coming down the conductor would flow upon the sidewalk and thence down grade toward the gate. The question is whether there was sufficient evidence to warrant a finding that ice produced from water so flowing upon the sidewalk caused the fall of the plaintiff.

The street sloped downward in the direction in which the plaintiff was travelling. There was evidence that the plaintiff was seen to fall "right by the gate," on the side of it nearest the pipe. Snow was falling at the time. The plaintiff's daughter testified that as a result of talking with her mother she went to Gay Head Street the "morning" after the accident and noticed some ice near the gate where the drain pipe "came up to the fence"; that "beginning at the gate at the foot of the pipe there was a spread or form which covered an area of two or three feet"; that "it began at the drain pipe and going on a little down hill and narrowed out"; that the "patch" of ice extended down to the nearest gate post and "some distance" beyond; and that "there was no similar ice on the rest of the sidewalk." A photograph introduced in evidence discloses a brick sidewalk of substantial width and apparently in good condition. Weather records showed that there were four inches

of snow on the ground on February 1; that some thawing occurred on the third, fourth, fifth, and sixth, reducing the amount of accumulated snow to one and four tenths inches; and that nearly four inches of light snow fell on the seventh (the day of the accident), most of which came before the time of the accident. Temperatures during the period after February 1 were consistent with alternate thawing and freezing, although the highest temperature recorded at the place of observation on the seventh was 32°, and there appears to have been no sunshine on that day.

Although there was evidence tending to show that the plaintiff fell at or near a point on the sidewalk where the pipe might well cause ice to form, and that ice was seen at the mouth of the pipe the next morning, we think there is still a lack of proof that this ice was present when the plaintiff fell or that, if it was present, she fell from slipping upon it. Weather conditions before February 7 were such that ice might have formed from the pipe before the accident, but the fresh light snow falling upon the roof, with temperatures at about the freezing point, might have produced the ice after the accident. There was no evidence as to the thickness or other characteristics of the ice seen by the plaintiff's daughter which might have had a tendency to show whether it was old or new. See *Collins* v. *Collins,* 301 Mass. 151. Moreover, if we assume that it could have been found that the plaintiff fell as the result of slipping, of which there was no direct evidence, yet the shape and size of the ice observed the next day are not shown. It does not clearly appear whether the "area of two or three feet" refers to square feet or to length or to breadth. So far as appears the plaintiff might have fallen "right by the gate" on the side "nearest to the drain pipe" as the result of slipping upon the fresh snow on the sloping sidewalk without slipping upon ice from the pipe, even if there was ice from the pipe on some part of the sidewalk in the immediate vicinity.

While the case is close, we think that the element of conjecture is too great to allow the verdict to stand. See *Berrenberg* v. *Boston,* 137 Mass. 231, 233; *Woodcock* v. *Worces-*

*ter,* 138 Mass. 268; *Young* v. *Kaplan,* 267 Mass. 152, 156; *Allan* v. *Essanee, Inc.* 309 Mass. 1, 6.

*Exceptions sustained.*