Keniston, C. J.
These are two actions of tort tried together for personal injuries sustained by the plaintiff on *210 March 6, 1943, as a result of slipping and falling on ice on the sidewalk abutting the premises owned and occupied by each defendant on Imrie Road, in the Allston district of Boston.
The answer of each defendant was a general denial and a plea of contributory negligence.
Due and sufficient statutory notice was alleged and proved in each case.
There was evidence from which it could be found that Imrie Road runs northerly and southerly with an upgrade in a southerly direction; that the premises of each defendant are on the easterly side of Imrie Road and adjoin each other, those of the defendant Halligan being southerly and at a higher grade than those of the defendant Kennedy. Both defendants acquired title to their respective premises prior to 1921, at which time the land between the houses of the defendants .sloped from the Halligan house on the south toward the Kennedy house on the north and also sloped from the rear of the lots toward Imrie Road or in a general northwesterly direction. The land of both defendants bordered on Imrie Road in the form of a bank about one and one-half to two feet high and even along the top of the bank north of the driveway, as appears in photographs offered in evidence at the trial and incorporated in the report and presented at the argument of this appeal.
In the summer of 1921 the defendants jointly caused a driveway, about six feet wide, to 'be “shoveled out and level-led” along their common boundary line, one-half of the driveway, or about three feet thereof, being on the Halligan land and the other half, or three feet thereof, on the Kennedy land. In 1922, the. defendant Halligan erected a “dry wall” reinforced at the back with larger rocks, at the south side of the driveway and also built a stone wall with cement mortar along the front of her land bordering on *211 Imrie Road, extending from the driveway in a southerly directions. Both walls appear in the photographs. The same year the city installed a sidewalk, curbs and a paved street on Imrie Road. The apron to the driveway was put in when the street was laid out and no ditches or drains were put in. Since 1922, when this work was completed, no changes have occurred in the shape, contour or conformation of the land between the two houses. The driveway extends back from the sidewalk and is level for about the first forty feet and then rises slightly thereafter. For a distance of twenty feet back from the sidewalk along the northerly side of the driveway, the Kennedy land, to a width of six feet, declines and pitches toward the driveway, but no other part of the Kennedy land slopes toward the driveway. On the northerly side of the Halligan house and south of the driveway, the sloping area of the Halligan land, amounts to about twenty-five hundred square feet and “where the driveway joined the sidewalk it sloped upward about an inch. ’ ’ The Halligan house stands at the crest of twenty-five hundred square feet of sloping area.
On rainy days, prior to the date of the accident, water had been seen running in the same place where the plaintiff slipped and fell upon ice, and on winter days, ice had been seen there.
On March 3, or three days before the accident, snow fell to a depth of three and 8-10ths inches. The temperature remained below freezing until March 5, when it rose above freezing up to forty-four degrees and remained above freezing all day with sunshine during the daylight hours. During the night the temperature was below freezing and was below freezing at 9:45 a. m. on March 6, when the plaintiff fell. At about 7:30 a. m. on March 6, snow started to fall and at 9:45 a. m., at the time of the accident, there was about two inches of snow on the ground.
*212 The plaintiff was walking northerly or downgrade on the east sidewalk of Imrie Road. • It was snowing and there was ahont two inches of snow on the ground. The snow was not slippery and the plaintiff had no trouble in keeping* her feet and was wearing overshoes. The sidewalk showed no sign of having been shoveled recently. "When the plaintiff reached- a point about five feet north of the driveway, her feet slipped, she tried to catch herself and fell and was injured. She fell on ice beneath the snow. She tried to get up and scuffed some snow off the ground; in doing so she then saw that she had fallen on ice under the snow, which ice was rough, not too smooth, kind of in ridges and was over the sidewalk where she fell, in the same place where she had previously seen ice or water.
A witness who was walking behind the plaintiff examined the ice. It started at the northwesterly corner of the driveway and continued in a northwesterly direction across the sidewalk. The surface was shiny and ridged.
At 4 o’clock in the afternoon of the same day, another witness who examined the place, found the ice was in a roughly triangular shape, that it extended at least one and one-half feet into the northwesterly corner of the driveway and across the sidewalk in a northwesterly direction about eighteen inches in width and spreading to a width of four or five feet at its widest point at the curbstone. It was clear ice. At that time it was still snowing.
The defendant Kennedy seasonably filed the following requests for rulings:
“1. The evidence does not warrant a finding for the plaintiff. 2. The evidence warrants a finding for the defendant. 3. The evidence warrants: a finding that the plaintiff’s own conduct was a contributing cause ■of the accident. 4. An abutting land owner cannot be held liable for injury caused by ice formed by water or snow coming from his premises because of the con *213 formation of Ms land. 5. An abutting* land owner has the right to change the surface of Ms land or improve it by the construction of buildings or by other means in any lawful manner and if the natural course of surface water is thereby altered, no liability is imposed on Mm. 6. The evidence is conjectural as to whether the ice upon which the plaintiff claims to have fallen came from natural causes, weather conditions, the negligent conduct of the defendant, or the negligent conduct of others, therefore the plaintiff cannot recover. 7. The evidence does not warrant a finding* that the alteration of the defendant’s land constituted a nuisance. 8. To find that the ice upon which the plaintiff claims to have fallen was created by a negligent act of the defendant is to find on evidence of mere conjectural nature. 9. On all the credible evidence, the finding should be for the defendant. ’ ’
The court deMed requests numbered 1, 6 and 9 and denied request number 8 with the notation “Negligence is not the test — 297 Mass. 186.” The remaining requests were granted with the notation as to requests numbered 2 and 3, “Warrants but not compelled.”
The defendant Halligan also made the following requests for rulings:
1. The evidence does not warrant a finding for the plaintiff.
2. There was no evidence of negligence on the part of the defendant.
The court denied request numbered 1 and granted request number 2 with the notation, “See 297 Mass. 186.”
The court found for the plaintiff in each case.
No question is raised as to the due care of the plaintiff. The defendants in their consolidated brief and argument have not questioned the propriety of the rulings upon any of the specific requests except so far as those requests raise the question of whether the evidence warranted a finding for the plaintiff as against each of the defendants.
*214 The defendants had the right to build the driveway upon their land even though it changed the natural flow of the surface water but if in doing so they created an artificial channel by which there was1 a substantial increase in the flow of water which discharged upon the sidewalk and formed the ice which was the cause of the plaintiff’s injuries, they would be liable. Hynes v. Brewer, 194 Mass. 435; Field v. Gowdy, 199 Mass. 568; Drake v. Taylor, 203 Mass. 528; Crafts v. McCobb, 303 Mass. 172; Harrison v. Poli-New England Theatres, Inc., 304 Mass. 123.
The changes in the surface of the land, in constructing the driveway, with sloping sides on each of the defendants’ land toward the driveway which sloped from the rear toward the sidewalk and was level for about forty feet back from the sidewalk, would warrant a finding that water flowed down the driveway in greater quantities than it would in the natural state and would discharge in substantially increased amounts1 upon the sidewalk. See Lucas v. Thayer, 263 Mass. 313.
It is immaterial so far as the defendant Kennedy is concerned that the area of her land sloping toward the driveway is comparatively .small and that therefore the amount of water flowing therefrom into the driveway would not be substantial. The basis of the liability is the creation and maintenance of the driveway by the two defendants by which the surface water was collected and discharged in substantially increased quantities upon the highway and not the source of the water so collected. Hynes v. Brewer, supra. Field v. Gowdy, supra. Bullard v. Mattoon, 297 Mass. 182.
The evidence is not so clear with respect to whether the ice upon which the plaintiff slipped was formed from water which flowed from the driveway of the defendants. The evidence that the plaintiff saw “that she had fallen on ice *215 under the snow” would tend to show that the ice formed prior to the snow; that it was ‘ ‘ rough not too smooth, kind of in ridges” would indicate that the ice was formed by running water. The evidence that “on rainy days prior to March 6, 1943, (the date of the accident) water had been seen running in the same place where the plaintiff slipped and fell upon the ice; and on winter days ice had been seen there” is little, if any, evidence of the source of the water; that is whether it ran out of the driveway or from some other place or leaves it entirely to conjecture; and the further evidence that “it started at the northwesterly corner of the drive and continued in a northwesterly direction across the sidewalk, the surface was shiny and ridged,” is descriptive of the location of the ice, rather than evidence of the source of the water which formed the ice. This evidence, however, taken in connection with the further evidence of the other witnesses who examined the ice and found it “in a roughly triangular shape, that it extended at least one and one-half feet into the northwesterly corner of the driveway (or the lower side of the driveway) and across the sidewalk in a northwesterly direction, about eighteen inches in width and spreading to a width of four or five feet at its widest point, which was at the curbstone,” would, we feel, justify a finding that the water flowed out of the driveway and not down the sidewalk or from some other direction. There is no direct evidence that there was no ice elsewhere on the sidwalk but such an inference can, we think be drawn from the evidence that the plaintiff and the two witnesses testify only as to this ice and the plaintiff testified that prior to her fall “the snow was not slippery and that she had no trouble in keeping her feet.”
The plaintiff was not required to exclude every possible source of the water which formed the ice other than the *216 driveway, and we think the trial judge could have found there was a greater likelihood that the water came from the driveway rather than from some other source. Harrison v. Poli-New England Theatres, Inc., supra, Cochran v. Barton, 233 Mass. 147. We think the case is more consistent with' the decisions in the cases of Hynes v. Brewer, supra. Field v. Gowdy, supra. Troy v. Dix Lumber Co., 300 Mass. 214. Cochran v. Barton, 233 Mass. 147. Drake v. Taylor, 203 Mass. 528. Crafts v. McCobb, supra. Harrison v. Poli-New England Theatres, Inc., supra. Marston v. Phipps, 209 Mass. 552, and is distinguishable from the decisions in the cases of Mosher v. Cape Ann Savings Bank, 309 Mass. 512. Bailey v. Blacker, 267 Mass. 73. Lucas v. Thayer, 263 Mass. 313. Walsh v. Schwoerer, 312 Mass. 593. Grimm v. Promboim, 265 Mass. 480. Robrish v. Snyder, 252 Mass. 92. Jefferson v. L’Heureux, 293 Mass 490. Young v. Kaplan, 267 Mass. 152.
A majority of this division is of the opinion that the report should he dismissed. So ordered.
G-illbu, J.
agrees to this opinion as to the defendant Mary M. Kennedy, but feels there is insufficient evidence to support the finding as to the defendant Margaret Halligan.