FRANK V. TROY *vs.* DIX LUMBER COMPANY.

SAME *vs.* ERVIN R. DIX.

Middlesex.   April 6, 1937. — May 23, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Snow and Ice.   Nuisance.   Way,* Public: nuisance.

For injuries sustained by a pedestrian who fell on ice formed on a public sidewalk from water which, discharged from a conductor leading from the roof of an abutting building, flowed in a channel across the lawn to the front walk and thence to the sidewalk, the owner of the premises properly could be found liable.

TWO ACTIONS OF TORT.   Writs in the Superior Court dated October 19, 1932.

In each case, there was a verdict for the plaintiff in the sum of $1,777.33 recorded with leave reserved by *Cox,* J., who then ordered verdicts entered for the defendants.   The plaintiff alleged exceptions.

*P. E. Troy,* (*T. W. Lawless* with him,) for the plaintiff.

*J. G. Bryer,* for the defendants.

DONAHUE, J.   These two actions were brought to recover damages for personal injuries received by the plaintiff from falling on an accumulation of ice upon the sidewalk in front of premises owned by the defendant in the first case, the record title of which was in the defendant in the second case.   The cases were tried together before a jury and there was a verdict in each case for the plaintiff.

The judge, on motions of the defendants, under leave reserved, ordered the entry of verdicts for the defendants. The exceptions before us are to the allowance of those motions.

It was agreed by the parties at the trial that the plaintiff was in the exercise of due care, that proper notices were seasonably given in accordance with the statute, and that, if the plaintiff was entitled to a verdict against either defendant, he was entitled to a verdict against both defendants.

The plaintiff, while on his way to work about 6:30 on a Saturday morning in February, was proceeding in an easterly direction, down grade, on the sidewalk on the north side of Pine Street, a public highway in the town of Arlington. The defendants owned a two apartment house, with common walks and front piazza, on the north side of the street. There were two concrete steps on the defendants' premises leading up from the sidewalk to a concrete front walk which gave access to the front steps of the piazza. At a point on the sidewalk opposite the two concrete steps, the plaintiff slipped, and fell, and was injured by reason of an accumulation of ice on the sidewalk, described in the testimony as smooth and very thin at its westerly edge and three inches thick at its easterly edge.

One contention of the defendants is that the evidence did not warrant a finding that the formation of ice which caused the plaintiff's fall came from water flowing from the defendants' premises. There had been a snow fall of eight inches beginning at eight o'clock in the evening of Thursday and ending in the early morning of Friday, which was the day preceding the accident. The highest temperature recorded on that day at the weather bureau in Boston was thirty-two degrees above zero. But there was testimony of "a little thaw that day; that on the roofs of the houses where the sun would beat down you would get a thaw off down through the gutters"; and that there was sunshine practically all day on Friday. The defendants' house faced the south and there was a piazza roof on that side of the house. Although the sidewalk was plowed out on Friday, considerable snow remained on its surface and was

there on Saturday morning when the plaintiff was injured. The surface of the sidewalk was then generally rough but it afforded "a good footing." The walking on the sidewalk was generally good both to the west and to the east of the portion of the sidewalk opposite the concrete steps leading to the defendants' premises. There, only, was there an accumulation of ice on the sidewalk on the north side of the street. The land of the defendants and the land of other abutters on that side of the street sloped toward the south and also toward the east. There was evidence that there was ice not only on the sidewalk but also on the concrete steps and on the front walk. The foregoing evidence taken with the testimony as to the character and appearance of ice on the sidewalk warranted a finding that the ice which caused the plaintiff's fall was formed from water which had flowed from the defendants' premises.

The mere fact that water comes from the premises of an abutting owner upon a sidewalk and there freezes into a dangerous formation of ice which causes injury to a pedestrian, does not establish a liability on the part of the owner. *Grimm* v. *Promboim*, 265 Mass. 480. *Jefferson* v. *L'Heureux*, 293 Mass. 490. Such a liability arises when the conformation of the land or the structures standing thereon collect water on the premises and discharge it upon the sidewalk at a place other than that where it would naturally flow and in larger quantity. *Field* v. *Gowdy*, 199 Mass. 568, 570, 571. *MacDonald* v. *Adamian*, 294 Mass. 187. *Bullard* v. *Mattoon*, 297 Mass. 182. There was here evidence to warrant a finding that such an accumulation and such a discharge of water from the premises of the defendants caused the formation of ice on the sidewalk on which the plaintiff fell. In order to impose a liability upon the defendants it was not necessary to show that water was discharged directly upon the sidewalk from a point where it was initially collected on the defendants' premises. *Cochran* v. *Barton*, 233 Mass. 147, 149, 150. *Bullard* v. *Mattoon*, 297 Mass. 182.

There was evidence warranting the finding that any water appearing on certain portions of the roof of the de-

fendants' building was collected by two conductor pipes and discharged on the surface of the defendants' land. One conductor was located at the southeast corner of the defendants' house, twenty-one feet from the sidewalk line. It was connected with a gutter at the eaves which collected water coming upon a portion of the roof. The other conductor was located at the southwest corner of the piazza, thirteen feet from the sidewalk line, and similarly drained water from a portion of the roof. Both conductor pipes were open at the bottom and were not connected with any drain pipe. The conductor at the southeast corner of the house ended two and a half feet from the ground and any water which it collected would fall on a concrete walk at the easterly side of the house which connected with the front walk. The conductor at the southwest corner of the piazza ended a foot and a half from the ground and water drained through it would fall partly upon a concrete block and partly upon the soil of the lawn in front of the house. The conductors had been in the same condition for some years prior to the day of the accident.

At the time the plaintiff fell, about 6:30 in the morning, the temperature was twenty-eight degrees above zero. From nine o'clock in the morning the temperature was above the freezing point, reaching forty-three degrees in the early afternoon, and there was a general thaw throughout the day. There was testimony that during the day there were icicles at the bottom of the two conductor pipes above described; that water was dripping from them; that water coming from the conductor pipe at the southwest corner of the piazza flowed across the front lawn down toward the steps; that on the lower concrete step there was a pool of water; and that water was coming down from the steps. There was also testimony that there was a formation of ice described as running from the conductor at the southwesterly corner of the piazza in a diagonal direction in "sort of a trough" across the front lawn to the front walk at a point near the bottom of the piazza steps and thence down the front walk and across the sidewalk, and that there was also a smaller formation of ice on the walk

at the east side of the house which joined the other formation at the northerly end of the front walk.

The testimony of a civil engineer as to the slope of the defendants' land and as to the comparative elevations of various points thereon was consistent with the ice formations described having been formed from water coming from the two conductor pipes. The land sloped from north to south. A point beneath the conductor at the southeast corner of the house had an elevation of one and two tenths feet more than a point at the southern end of the front walk near the two concrete steps. The top of the uppermost concrete step was eight to ten inches above the level of the sidewalk. The land also sloped from west to east. There was a difference of three feet between the elevation of the conductor at the southwest corner of the piazza and a point on the front walk near the bottom of the piazza steps.

From the temperatures shown by the weather bureau records an inference was warranted that the formation of ice, seen on the day of the accident some hours after its occurrence and described in the testimony, must have been on the sidewalk and on the defendants' premises at the time of the plaintiff's fall earlier in the day. The jury warrantably could have found that at the time of the plaintiff's injury there was a continuous formation of ice from the sidewalk over the two concrete steps and the front walk on the defendants' premises and in a channel over the front lawn to a point under the opening in the conductor pipe at the southwest corner of the piazza. The conclusion was warranted that the ice on the sidewalk which caused the plaintiff's fall had been created in large part by water collected and discharged by the conductor, which had, prior to the plaintiff's fall, flowed in the course indicated by the ice formation over the defendants' premises to the sidewalk and had there frozen into ice. *Drake* v. *Taylor*, 203 Mass. 528. There was evidence warranting a finding for the plaintiff.

*Exceptions sustained.*

*Judgments to be entered on the verdicts returned by the jury.*