MORGAN, J.
(dissenting)
About 8:30 P. M. on March 16, 1940, when it was quite dark, the plaintiff was walking north on the west sidewalk of Wayside Avenue *5 in East Cleveland, Ohio, and when he was about 75 feet north of Euclid Avenue he fell and sustained severe injuries. The plaintiff was carrying a thermos bottle and a can of sardines. One or both of these objects jammed into his abdomen when he fell, causing a rupture of the spleen. He was rushed to a hospital where an emergency operation was performed, removing the spleen and a considerable ^quantity of blood. Plaintiff recovered sufficiently to resume work in ¿December, 1940.
I The temperature on the evening of March 16, 1940, was below freezing. The plaintiff slipped on a smooth surface which he testified felt like ice. The plaintiff’s father examined the premises the following morning before daylight and he found there was a strip of ice from a foot to eighteen inches wide, extending diagonally across the sidewalk at the point the uncontradicted evidence shows the plaintiff fell. He further testified that there was no ice and no snow at any other place on the sidewalk.
The question to be decided in this case is this: Could a jury have reasonably found from the evidence that the ice on the sidewalk was caused by the acts or negligence of the defendants so as to make the defendants liable for the plaintiff’s injuries?
It is not claimed that the trial court was justified in directing a verdict on the issue of contributory negligence.
The evidence was uncontradieted that a considerable part of the surface and other water from the abutting premises flowed across the west sidewalk of Wayside Avenue at the point where plaintiff testified that he fell and where his father found a strip of ice across the sidewalk a few hours after-wards.
The following statement in the majority opinion in this case is undoubtedly the law:
“When one is injured by. falling because of ice accumulated upon a public sidewalk from the natural flow of surface water, no right of action for damages can be maintained against the owner of the abutting property.”
Furthermore, the abutting property owner has the right ’ to improve his property by making fills or cuts in the ordinary manner and the fact that, as incidental to the improvement, the direction of the flow of the surface water is altered, does not of itself create liability on the part of the abutting owner in a case of this kind.
The facts which must be proved to impose liability on the abutting owner, are well stated in 25 American Juris. 805:
“It may be laid down as a general rule that one who so constructs or maintains a structure upon his premises as to cause an artificial discharge or accumulation of wat-er upon a public way, which by, its freezing makes the use of the way dangerous, will be held liable to one who being rightfully on the way and exercising due care is injured in consequence of such dangerous condition.”
From the evidence in the ease the jury could reasonably have found that plaintiff’s fall was caused by slipping on the ice accumulated on the sidewalk from water which flowed from the abutting property on which was a gasoline station leased or operated by the defendants.
The question in the case accordingly narrows down to ' this: Was there evidence to go to the jury that this strip of ice on which plaintiff fell was caused by “an *6 artificial discharge or accumulation of water” from the abutting premises on to the sidewalk, or was the evidence in the case such that the only finding that a jury could reasonably have made, if the case had been submitted to them, would have been that the accumulation of ice on the sidewalk was only an incidental result of the improvement of the abutting premises for use as a gasoline station?
The southern boundary of the lot is Euclid Avenue. The contractor who made the improvement testified that the level of the lot before the improvement was about three feet lower than Euclid Avenue. A fill was made and covered with a slag screening which raised the lot to the Euclid Avenue level.
After the improvement, the easterly part of the lot sloped north and east toward Wayside Avenue. The contractor testified “we kept this yard kind of sloping down as much as was possible toward Wayside.”
If the surface water had been permitted to flow in a natural unobstructed manner to Wayside Avenue, the contractor testified that “the water would carry the slag off the premises and into the street.” To avoid this condition there was constructed as a part of the improvement a retaining wall of concerete about 20 feet in length along the east side of the premises about three feet from the west side of Wayside Avenue. The retaining wall was of sufficient height to divert surface water and extended nearly to the northeast corner of the lot, This wall by directing the flow of the water toward the north end of the lot was intended to prevent and did prevent the water from flowing in a natural unobstructed manner off the premises.
A plank was set on the north side of the lot about three feet from the north end of the retaining wall, and at right angles to it, which prevented any water to flow to the north and directed all the water caught by the retaining wall to flow in a narrow stream across the west sidewalk of Wayside Avenue. The uncontradieted evidence is to the effect that it was at this point on the sidewalk that'the plaintiff fell.
The evidence discloses that in the operation of the station, cars were washed and radiators drained. Hutchens said that he drained cars between the station building and Wayside Avenue. So it is apparent that in addition to surface water from natural precipitation, water from auto radiators was drained where it would go through the channel between the retaining wall and the plank.
A neighbor who saw the plaintiff just after he had fallen and while attempting to pick himself up, testified that between the retaining wall and the plank “there was water running down there most of the time.”
The defendant, Hutchins, also testified that between the north end of the retaining wall and the east end of the plank “much water is drained.” The flow of the water has been such as to cut through the slag and cause what defendant Hutchins referred to as a “wash out.” When asked as to what portion of the area of the lot drained toward Wayside Avenue, the witness answered “fifty percent.” All of this water, except the part which flowed along the driveway to the south of the retaining wall, was accumulated and flowed through the space between the wall and the plank and across the west side of Wayside Avenue.
As to the condition at the place where the water from the abutting premises was directed across Way *7 side Avenue the defendant Hut-chins testified as follows:
Q. “You knew or noticed, did you not, that at this point at the north end of the retaining wall, that there was ice formed there at the point where I pointed out to you yesterday, where Mr. Cavanaugh claimed he fell? You noticed that?
\ A. “Yes; there is ice formed Vithere.
1 Q. “What’s that?
“There is ice formed there.”
“Q. Yes. The ice from the water then runs down through the corner of the lot between the concrete retaining wall and the timber retaining wall or plank retaining wall?
A. Yes, sir.
“Q. That’s right?
A. Yes.
“Q. That was a common occurrence while you were there?
A. Yes.
“Q. That ice would pile up there, would it, on the sidewalk?
A. Yes.
“Q. And become how thick?
A. Varied. I have seen it as much as two inches thick there, and then I have seen it with just a thin skin.
“Q. That was different than it was on the other parts of the sidewalk along Wayside and on Euclid, wasn’t it?
A. I am no authority on what happened below there. I don’t really know. I never took any particular notice.
“Q. You know that was the condition there?
A. Yes.
“Q. And that was quite unusual wasn’t it?
A. Yes, I guess it was.”
Hutchins also testified:
“Q. Now, every time it snowed I presume you went out and and cleaned off the walk, did you?
A. Yes, as near as I could.
“Q. But where this water seeped down through this place, the ice would form there in spite of that?
A. Yes.”
The cases uniformly hold that where ice is formed on a sidewalk from water discharged thereon by a downspout on the abutting premises, the liability of the abutting owner to a pedestrian for injuries sustained by him by slipping and falling on the ice presents a jury question. This is the holding in Lozarides v Turowske, 28 Oh Ap Rep. 208.
The law does not distinguish between water discharged from downspouts and water accumulated and discharged on the sidewalk in some other manner. As is stated in 25 Am. Juris. 805, referring to similar cases in which the abutting owner has been held liable:
“Common instances of the application of this rule are where water is cast on the sidewalk by drains leading from the adjoining premises by retaining walls, awnings, canopies, bay windows, etc., and by conductor pipes constructed to carry water from the roofs of the adjoining buildings.”
In such cases the abutting owner
“is liable if, by the structures which he maintains upon his land, he causes a substantially larger volume of water to be accumulated and discharged and thereby so contributes to the formation of ice upon the sidewalk as to increase substantially the amount of such ice, although water from other sources contributes to the dangerous condition.” (25 Am. Juris. 8061
*8 I find that more cases on this general subject have arisen and been decided in Massachusetts than in any other state. Both plaintiff and defendant cite Massachusetts cases in their briefs. There are two well considered recent Massachusetts cases which review previous decisions and set. forth with ■great clearness the principles of law applicable to this class of •cases. They are, Bullard v Mattoon, et al, 297 Mass. 182, and Troy v Dix Lumber Co., 300 Mass. 214.
In 297 Mass. 182, the court held:
“Syllabus: A building so constructed that water dripped from overhanging portions of the building to the public sidewalk, where it froze and formed a dangerous accumulation of ice, constituted a nuisance and a pedestrian who fell thereon and was injured could recover from one owning or in control of the building without proof of specific negligence in the construction or maintenance of the building.”
In the .above case, the trial judge had instructed the jury that the defendant would be liable only for a “negligent act of construction.” The court held this instruction to be error and stated: (page 186)
“The basis of the liability of an owner of land or buildings for injury received by a traveller on an adjacent highway due to ice formed from water coming from the owner’s premises, is the creation of a condition on the highway dangerous to those lawfully using it. A landowner ‘has no right to collect water into a definite channel by a spout or otherwise and pour it upon a public way. If he does this and through the operation of natural causes the water freezes, he is the efficient cause in the creation of a nuisance and is liable for whatever damage ensues as a probable consequence.’ (Field v Gowdy, 199 Mass. 568-570-71.) This principle applies whether water so collected is poured directly on the street, or is deposited some distance from the street but flows down a concrete walk, or a sloping bank, or other graded area on the owner’s premises to the highway.”
In the case in 300 Mass. 214, the court held:
“Syllabus: For injuries sustained by a pedestrian who fell on ice formed on a public sidewalk from water which, discharged from a conductor leading from the roof of an abutting building, flowed in a channel across the lawn to the-front walk and thence to the sidewalk, the owner of the premises properly could be found liable.”
The court, on page 216, said:
“The mere fact that water comes from the premises of an abutting owner upon a sidewalk and there freezes into a dangerous formation of ice which causes injury to a pedestrian, does not establish a liability on the part of the owner. Such a liability arises when the conformation of the land or the structures standing thereon, collect water on the premises and discharge it upon the sidewalk at a place other than that where it would naturally flow and in larger quantity. In order to impose a liability upon the defendants it was not necessary to show that water was discharged directly upon the sidewalk from a point where it was initially collected on the defendant’s premises.”
The above two Massachusetts cases state the law as generally declared in other jurisdictions where *9 cases of this kind have arisen, with the possible exception of New Jersey, where, as stated in the note in 34 A. L. R. 418:
“The rule followed by the New Jersey courts is somewhat more fayorable to the abutting owner.”
However, an examination of the New Jersey cases cited in defendants brief disclose that they are not in conflict with the above decisions in Massachusetts and can all be distinguished on their facts from the instant case.
The majority opinion in this case largely relies on the case of Sherman v LaCrosse et al, 181 Wis. 51, 34 A. L. R. 406. In that case it was held that an abutting owner was not liable for injury to a pedestrian on the public sidewalk in front of his property by a fall on the ice accumulated because the slope of a paved walk leading from the street to a building on the premises conducted eaves drip from the building on £o the sidewalk.
The distinction between the above Wisconsin case and the instant case seems to me to be a clear one. The court stated in its opinion, the walk “was built for and devoted to the ordinary and usual purposes of a sidewalk.” It is not contended that it was built for the purpose of accumulating water coming from the roof of the building and conveying it on to the city sidewalk.
In the instant case the retaining wall was built for the purpose of retaining the slag and preventing it from being carried on to Wayside Ave., as would have been the result if the water had been permitted to flow in its natural unobstructed manner. Accordingly, one of the main purposes of the retaining wall was to avoid this result by diverting and accumulating the water and causing it to flow in a single stream across Wayside Ave. at the northeast corner of the lot. The distinction between the two cases is well pointed out in the note to the Wisconsin case in 34 A. L. R. 419:
“The idea that the landowner has a right to change or improve his premises, and is not liable if a merely incidental result of his so doing is to cast water upon the sidewalk, is also brought out in the reported case (Sherman v LaCrosse) but it is evident that the court would not have gone to the extent of excusing the owner from liability had the construction there in question been one designed or intended to concentrate the water into a stream and pour it on the sidewalk.”
It is my opinion that in applying well recognized principles of law to the facts in this case and giving the evidence, as we are required to do, the most favorable construction for the plaintiff reasonably permissible, the trial judge should have submitted this case to a jury and for his failure so to do the case should be reversed and remanded.