## Stephens' Administrator v. Deickman, et al.

(Decided March 27, 1914.)

Appeal from Kenton Circuit Court
(Common Law & Equity Division).

1. Waters—Overflow of—Surface Water—Liability of Adjoining Owner.—At common law the owner of adjoining property was

not liable for the natural flow of water across his land on to the land of his neighbor; but he was liable if he collected the water in a quantity by artificial means and discharged it in a flood on his neighbor's land.

2.    Waters—Overflow of Surface Water—Nuisance.—A land owner or occupier of land cannot lawfully collect surface water into a definite channel and discharge it upon a sidewalk so as to make it unsafe for the use of travelers; such an act creates a public nuisance, and the traveler who suffers injury therefrom can sue the wrong-doer.

3.    Waters—Overflow of Surface Water—Nuisance.—Where an abutting property owner collected the water from the roof of his house into a definite channel by a down-spout, which emptied upon a sidewalk, and the water thus emptied, by alternate freezings and thawings accumulated ice upon the sidewalk to such an extent as to make it an obstruction or a nuisance, whereby a pedestrian was injured, the property owner was the efficient cause in the creation of the nuisance, and was liable for whatever damage ensued as a probable consequence.

4.    Waters—Conducting Water from Roof of House to Sidewalk—Nuisance—Duty of Landlord to Remove.—In conducting the water from the roof of his house to the sidewalk, a property owner must use ordinary care not to cause an obstruction or nuisance, by which persons lawfully using the sidewalk, and in the exercise of ordinary care upon their part, may be injured; and in case such an obstruction or nuisance should arise suddenly or unexpectedly, it is the landlord's duty to remove the obstruction or nuisance as soon as he has knowledge of its existence, or could have had such knowledge by the exercise of ordinary care.

CHARLES M. F. STRIGER and R. H. GRAY for appellant.

JOHN E. SHEPARD for appellees, Geo. H. Strotman, Bernard Strotman and Henry Schroder.

STEPHEN L. BLAKELY for appellee, Theodore Deickman.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This action for damages for the death of Mary Stephens alleged to have resulted from injuries sustained in a fall upon a sidewalk in the City of Covington, was filed against the city of Covington, Theodore Deickman, the owner of the abutting property, and George and Bernard Strotman, the lessees thereof. The petition alleged, in substance, that Deickman owned the lot and building at the southwest corner of 15th and Holman streets; that said building was 80 feet long, and more than 30 feet wide, with a four inch metal down-spout

from the roof which emptied the water gathered on the roof directly upon the cement sidewalk in front of the building, where said water, by alternately freezing and thawing, formed a covering of ice which spread out and upon the sidewalk in great and dangerous quantities; that by repeated thawing and freezing the ice accumulated in ridges and lumps, and in such quantities, as to cause a dangerous obstruction upon the sidewalk and over which Mary Stephens stumbled and fell, causing the injuries which resulted in her death; and that said slick, slippery and dangerous condition had existed and continued for more than two weeks before the accident, and was known to the defendants, or they, by the exercise of ordinary diligence could have known it, all of said time.

The circuit court sustained the demurrers of Deickman and his tenants to the petition; and from an order dismissing the petition upon plaintiff's failure to further plead, the plaintiff prosecutes this appeal.

The suit against the city is not here; this appeal relates solely to the case against Deickman and his tenants, and presents but one question, to-wit: the liability of the owner of abutting property, and his tenants, for injuries sustained by a pedestrian in walking upon ice formed on a sidewalk in front of his property in the manner above set forth, and as the result of water carried from the roof by the owner's gutters and pipes. It is not alleged that the down-spout, of itself, constituted an obstruction upon the sidewalk; neither is there any allegation as to the thickness of the ice; and, as the petition charges that said ice was caused to spread out upon the sidewalk, it is clear the injury received by Mrs. Stephens was caused by her slipping upon the ice.

As the question is one of first impression in this jurisdiction, appellant relies, by way of analogy, upon Covington Saw Mill & Mfg. Co. v. Drexilius, 120 Ky., 493, claiming that the principle there announced supports the petition in this case. In the Drexilius case the Saw Mill Company, without the permission of the city, and entirely for its own convenience, constructed a covered wooden sewer across a public alley; and the court held it was the company's duty to maintain the sewer in such a reasonably safe condition as would not interfere with the public's superior use of the alley for any purpose for which it might have been properly used; and that

its failure to keep the sewer in such repair made it a nuisance.

While not directly in point, the principle there announced that one who uses a public easement for his own purposes must keep it in a reasonably safe condition for the use of the public, is applicable to the case at bar.

In the same way appellee relies upon Webster v. C. & O. Ry. Co., 32 Ky. L. R., 404; Jaeger v. City of Newport, 155 Ky., 110, and Varney v. City of Covington, 155 Ky., 662, in support of the proposition that the property owner is not liable. While those suits were against the municipality, it is insisted the principle which excepted the city from liability in those cases, applies equally to the case of an abutting property owner.

In the Jeager case the accident happened at the intersection of an alley with a street. There had been snow, and as the snow melted the water ran down the alley and was frozen at the point where the sidewalk crossed the alley. The ice had accumulated until it was about even with the sidewalk—perhaps six inches high, with a large ridge on it. When Mrs. Jaeger stepped on the ice she fell and was injured, although she fell before she reached the ridge of ice. In that case this court held the city was not liable; and it is argued that if the city was not liable under such circumstances, surely the property holder would not be liable, or bound to a greater degree of care, than the city itself. In the course of the opinion, however, the court said:

"While, due to the operation of the statutes there in force, municipalities in the New England States are held to a stricter degree of liability, the decided weight of authority elsewhere, as well as the tendency of the more recent decisions, is to hold that a city is not ordinarily liable for mere slipperiness of its sidewalks, occasioned by snow and ice. Where, however, the sidewalk itself is defective, *or the snow or ice amounts to an obstruction, or its natural condition has been changed by artificial means, liability may attach,* or where it is customary to treat the removal of snow and ice as a regular part of highway management, a failure to do so may become wrong or negligent." (Cases cited).

The same rule was announced in Varney v. City of Covington, 155 Ky., 662, and the language above quoted from the Jaeger case was repeated with approval.

It will be noticed, however, that the exemption from liability was based upon the fact that the city had done.

nothing to change the natural condition of the surroundings. That fact is clearly shown by the closing paragraph in the opinion in the Varney case, where it is said:

"As it was not made to appear by the proof that the injury sustained by the appellant was the result of any defect in the construction of the sidewalk, *or the changed natural condition of the ice by artificial means,* or that the city had undertaken the duty of removing the snow and ice from its sidewalks, there is no ground for our holding that the trial court erred in directing a verdict in favor of the appellee."

We are not, however, without abundant authority from other jurisdictions which is directly in point.

In Ready v. St. Louis Brewing Association, 161 Mo., 523, 53 L. R. A., 805, the court, in discussing the question of the joint liability of the city and the abutting property owner for negligently suffering rainwater to be discharged from defective pipes from his roof so that it freezes and forms a dangerous condition of the sidewalk, said:

"It is argued upon the authority of Norton v. St. Louis, 97 Mo., 537, 11 S. W., 242; St. Louis v. Connecticut Mut. L. Ins. Co., 107 Mo., 92, 17 S. W., 637; Baustian v. Young, 152 Mo., 317, 53 S. W., 921, and other cases cited, that the abutting owner is not responsible for the condition of the sidewalk in his front, but that the duty to look after that is on the city alone. It does not, however, impair the doctrine laid down in those cases to say that an individual may become liable and jointly liable with the city for an unsafe condition of the sidewalk. This liability does not arise from the fact that he is owner of property abutting the sidewalk, but from the fact that he is instrumental in causing the condition, either by his wilful act or negligent omission to perform a duty which the law imposes on him. If he is allowed an extraordinary use of the sidewalk for his private convenience, as, for example, to place in it a manhole for the reception of coal (Benjamin v. Metropolitan Street R. Co., 133 Mo., 274, 34 S. W., 590), a water meter (Carvin v. St. Louis, 151 Mo., 334, 52 S. W., 210), or an excavation in close proximity to the sidewalk for a foundation for a new building (Wiggin v. St. Louis, 135 Mo., 558, 37 S. W., 528), the law imposes on him the exercise of reasonable care to guard the public from injury in such use. And it may be said that if the individual neglect to per-

form any duty that the law imposes on him in particular, and a dangerous condition of the sidewalk results, then a new duty on him in relation to that condition arises, and, of course; with greater force, it would be so if that condition was the result of his wilful act."

Again, in the same opinion, we find the following language:

"It is said by this defendant that there is no law requiring it to have gutters and down-spouts on its buildings at all. There is no statute on the subject that we are aware of, but the principle of the common law is that, while the owner of adjoining property is not responsible for the natural flow of water across his land onto the land of his neighbor, yet he is liable if he collects it in a quantity by artificial means, and discharges it in a flood on his neighbor's land, and that principle underlies that feature of this case. Water accumulated on a large roof, and directed to a single point, may cause a nuisance for which the owner of the house would be liable. If, therefore, the petition is to be construed into stating a case in which the brewing association was negligent in suffering water to be discharged on the sidewalk where it became frozen, and formed a dangerous condition (and that seems to have been the construction put upon it by both parties and the trial court), then it showed a condition of the sidewalk for the continuance of which for an unnecessary period both defendants would be liable, the joint wrong being the neglect to remove the obstruction."

The same rule has long maintained in Massachusetts.

In Maloney v. Hayes, 206 Mass., 1, 28 L. R. A. (N. S.), 200, the court said:

"The plaintiff, while lawfully using the street as a traveler, was injured by falling on an accumulation of ice, which had been formed from water collected and discharged upon the sidewalk, through a spout attached to a conductor leading from the roof of the defendant's house. A landowner or occupier of land cannot lawfully collect surface water into a definite channnel, and discharge it upon a highway, making it unsafe for the use of travelers. The act creates a public nuisance, and a traveler who suffers injury therefrom can sue the wrong-doer. Hynes v. Brewer, 194 Mass., 435, 9 L. R. A. (N. S.), 598, 80 N. E., 503."

Again, in Field v. Gowdy, 199 Mass., 568, 19 L. R. A. (N. S.), 237, the court said:

"A landowner has a right to change the surface of his lot, or improve it by the construction of buildings or by other means, in any lawful manner, and, if the natural course of surface water is thereby altered, no liability is imposed on him. But he has no right to collect water into a definite channel by a spout or otherwise and pour it upon a public way. If he does this, and through the operation of natural causes, the water freezes, he is the efficient cause in the creation of a nuisance, and is liable for whatever damage ensues as a probable consequence. Cavanagh v. Block, 192 Mass., 63, 6 L. R. A. (N. S.), 310, 116 Am. St. Rep., 220, 77 N. E., 1027; Hynes v. Brewer, 194 Mass., 435, 9 L. R. A. (N. S.), 598, 80 N. E., 503; Leahan v. Cochran, 178 Mass., 566, 53 L. R. A., 891, 86 Am. St. Rep., 506, 60 N. E., 382. There was evidence tending to show that from two spouts on the defendant's house one about 11 feet from the street line, and the other nearer by the width of a piazza, water was collected from the roof and turned upon his concrete walk, and by the natural grade of the walk flowed to the sidewalk, where it froze in a ridge across the width of the public walk about three inches in thickness in the middle. This was sufficient to warrant a finding that the defendant collected the surface water in an artificial course and poured it upon the public way in such a manner as to create a nuisance."

In Tremblay v. Harmony Mills, 171 N. Y., 599, the court distinguishing, if it did not overrule, Wenzlick v. McCotter, 87 N. Y., 122, and Moore v. Gadsden, 87 N. Y., 84, said:

"Assuming the sufficiency of the appellant's exception to raise the point, which may well be doubted, the question presented on this appeal is whether the trial court erred in instructing the jury that if the defendant was negligent in maintaining a leader from the roof of a building so as to discharge water on the sidewalk by which ice was accumulated thereon and the walk rendered dangerous, the plaintiff was entitled to recover. 'At common law any act or obstruction which unnecessarily incommodes or impedes the lawful use of a highway by the public is a nuisance' (Angell on Highways, section 223), and any party who sustains a private or peculiar injury therefrom may maintain an action to recover the damages sustained (Wakeman v. Wilbur, 147 N. Y., 657.) This is unquestionably the general rule. That the jury could have found that the discharge of

water and drippings from the leader in winter weather, when the water so discharged was liable to freeze and form ice, rendered the sidewalk dangerous and constituted an obstruction, and that the defendant was negligent in not carrying his leader under the sidewalk to the carriageway seems to me quite plain. To exonerate the defendant from liability it must establish one of two propositions: First, that it had the lawful right to discharge the water which it had collected on the roof of its building upon the highway regardless of the effect of that action upon the highway; or, second, that because the municipality was liable to any one injured by the defective character of its highway, no action could be maintained against the abutting owner, though his act may have created the danger or defect. I think that neither proposition can be sustained."

See also Loois v. Eureka Club, 37 App. Div., 628, 56 N. Y. Supp., 66; Macauley v. Schneider, 9 App. Div., 279, 41 N. Y. Supp., 519; New York v. Dimick, 49 Hun., 241; McConnell v. Bostelmann, 72 Hunn., 238; Thuringer v. N. Y. C. & H. R. R. Co., 82 Hun., 33, to the same effect.

The Supreme Court of Pennsylvania recognized the same rule in Brown v. White, 202 Pa., 297, 58 L. R. A., 324, where the court said:

"The testimony of the plaintiff showed that on the morning of the accident there was a continuous ridge of ice extending from the mouth of the archway across the pavement to the curb. In the center of the ridge it was from 3 to 5 inches thick, and sloped to the sides. It is claimed by the plaintiff, and her evidence tended to show that this accumulation of ice was produced by the water which passed through the defendant's drainpipe, and thence through the archway to the pavement, where it froze. This action was brought by the plaintiff to recover damages for the injuries she sustained by the alleged negligence of the defendant in causing the pavement to be obstructed by ice. * * *

"The second, third and fourth assignments complain of the court's refusal to admit testimony to show that in the borough of Chambersburg it is customary to drain water from lots, roofs, and waste pipes for domestic use in the houses of the borough, over and through uncovered drains across pavements to the gutters in the street, in the same manner as was done in the case on

trial. The learned trial judge very properly sustained the objection to the offers, and excluded the testimony."

Bernard v. Woonsocket Bobbin Co., 23 R. I., 581, 51 Atl., 209, is to the same effect.

The rule above announced is nothing more than an application of the older rule, which declares that an owner of land has no right to rid his land of surface water by collecting it in artificial channels and discharging it through or upon the land of an adjoining proprietor, as laid down by Gould (section 271), and recognized by this court in Pickerill v. City of Louisville, 125 Ky., 213, and in Johnson v. Marcum, 152 Ky., 630.

The only case we have found which seems to be out of harmony with the prevailing doctrine is Jessop v. Bamford Bros. Silk Mfg. Co., 66 N. J. L., 641, 58 L. R. A., 329. The case is not directly in point, and five justices dissented.

From these authorities it follows that the property holder, in conducting the water from the roof of his house to the sidewalk, must use ordinary care not to cause an obstruction or nuisance, by which persons lawfully using the sidewalk, and in the exercise of ordinary care upon their part, may be injured; and, in case such an obstruction or nuisance should arise suddenly or unexpectedly, it is the landlord's duty to remove the obstruction or nuisance as soon as he has knowledge of its existence, or could have had such knowledge by the exercise of ordinary care.

In the case at bar the petition alleges the ice had remained upon the sidewalk for more than two weeks before the accident, and to the knowledge of the appellees. Clearly it stated a case of actionable negligence, and the demurrer to the petition should have been overruled.

Since the petition equally charges all of the defendants with the negligent acts complained of, and it has not yet been made to appear that the landlord did not have complete control over his premises, the demurrers of all the appellees to the petition should have been overruled. Lee v. McLaughlin, 86 Me., 410, 26 L. R. A., 197.

Judgment reversed for further proceedings consistent with this opinion.