TEXAS AND NEW ORLEANS RAILROAD
COMPANY, Appellant,

v.

D. H. BROADWAY and D. L. Broadway,
et al., Appellees.

No. 6347.

Court of Civil Appeals of Texas.

Beaumont.

Jan. 5, 1961.

Rehearing Denied Feb. 1, 1961.

McGregor, Sewell & Junell, Houston, for appellant.

Fulmer, Fairchild & Badders, Nacogdoches, for appellees.

McNEILL, Justice.

This is a railroad crossing accident case. Appellees, D. H. Broadway and son, D. L. Broadway, sued appellant for damages for personal injuries resulting from a collision between a 1947 model Ford car which the son, as employee of his father, was driving and one of appellant's freight trains at what is known as the Mahl Crossing on FM Road 698 in Nacogdoches County. At the time the car was towing a cub farm tractor upon which the father was riding.

On trial to a jury appellant was found negligent in the following respects: (1) in failing to blow the train whistle at a distance of at least 1,320 feet from the crossing; (2) in failing to keep the bell ringing from such point until the engine entered the crossing. The jury also found the crossing at the time was an extra-hazardous one and appellant having failed to maintain an automatic warning signal thereat was also negligent. It found each of said acts of negligence was a proximate cause of plaintiffs' injuries, found damages in favor of D. H. Broadway in amount of $34,300 and in favor of D. L. Broadway in amount of $69,505, and further found ap-

pellees not guilty of contributory negligence. Judgment was rendered thereon, and at hearing upon new trial, after requiring the elder Broadway to file a remittitur of $11,500 and the younger Broadway a remittitur of $27,000, the trial court overruled motion for new trial.

Appellant appeals upon 18 points. Its first is, in effect, that since appellee D. L. Broadway, in operating the car in the manner he did as he approached the crossing, was guilty of negligence as a matter of law and the trial court should have instructed a verdict in favor of appellant. The point is argued both from the standpoint of common law negligence and also from failure to comply with requirements of Article 6701d, sec. 86(d), that since according to appellee D. L. Broadway's own testimony the car stopped within 20–25 feet of the track so he could look for a train, and since there was no obstruction at such place to keep him from having seen the train approaching as it came down the incline toward the crossing, although he stated he did not see the train, this cannot avail him for what is in plain sight must be seen. There was considerable testimony which supports the view that the train must have been in plain sight at the time but there was also testimony of probative value to the contrary.

The accident happened in clear, dry weather about 10:30 o'clock a. m., October 7, 1957. The road runs generally east and west and the railroad north and south. The train was approaching the crossing from the north going toward Nacogdoches and the car pulling the tractor was approaching from the east going west. Appellant owned an acre of land and section house with accompanying outbuildings in the northeast or pertinent corner of this crossing and the angle there between the railroad and the road was about 66 degrees. For some distance as the crossing is approached the road slopes gently toward the west and the railroad track slopes gently toward the south. The diesel engine pulling 14 freight cars and caboose had just come over a hill about 1,500 feet north of the crossing and was coasting toward the intersection at about 30 miles per hour and the car with the tractor in tow was approaching it at about 5–10 miles per hour. The testimony is sharply conflicting as to whether the train whistle was blown and the bell rung. All railroad employees upon the train testified that the whistle was blowing properly and most of them testified that the bell was rung. On the other hand, both appellees and two or more witnesses in the neighborhood at the time testified that they heard no bell rung nor whistle blown except they recall a whistle right at the moment of impact. Appellees both testified that the car was brought to a stop when its front end had reached 20 to 25 feet from the nearer rail and they looked both ways and listened for a train. The son stated that he looked to his right toward the north for a train but the high weeds or grass along the road bank at the point effectively obstructed his view. He looked to the left and could see down the track a good distance and saw no train; he listened and heard none coming. He then started slowly forward and in doing so had to look backwards because there was 4 or 5 feet of slack in his tow chain. In the meantime his car was slowly moving forward. When the slack was taken out of the chain he stated he glanced again to his left down the railroad tracks to the south and saw no train and was just bringing his head around to look to his right and to the north for a train when, because of a sudden jerk or heavy drag on his car from the rear, he turned his head again toward the left and rear to see what was causing it. As he did so the front of his car had reached the first rail and the front of the engine hit the car forward of the windshield and threw it sideways over into a ditch on his left side of the road. The sudden drag or pull from the rear was caused by appellee D. H. Broadway, who was seated on the tractor seat some 43 feet to the rear of the son, who had just caught a glimpse or view over the

weeds and grass of the upper part of the moving train and applied the brakes of the tractor in an attempt to stop his son from reaching the crossing. That the father saw the top of the train when the son did not was explained by the fact that the former was sitting on the tractor seat which was somewhat higher than was the car seat. It may be explained also by the fact that the bank along the road was lower opposite the father.

■ Plaintiffs' Exhibit No. 1 is reproduced here and shows the crossing involved.

It also shows the section house with a group of trees surrounding it with the bank of dirt along the roadside and railroad track with the crossbar railroad sign in that sector. As will be seen from this picture, the highest part of the bank is at or near the intersection of the two ridges. Various witnesses put the height of this part of the bank along the road at from 2½ to 5 feet above the level of the paved surface of the road. The distance from the nearer track to the railroad crossbar is 10½ feet and from the nearer rail to the highest point or knob of the bank was estimated at from 12 to 18 feet. The year 1957 was a wet one and the accident happened after the full growth of the growing season of grass and weeds and before frost had struck tree leaves and other vegetation. The picture was taken on November 14, 1957 from a 5 foot level at a point 100 feet south of the crossing. Between the time of the accident and the taking of the picture a grass fire had burned off the area in the corner of the northeast sector. Much dispute is reflected in the six volume statement of

facts as to whether high weeds or Johnson grass obstructed the traveler's view until he had reached to within 12 to 15 feet of the nearer rail of the track. There was proof on the one hand that the section house had been vacant for some 2 months before the accident and rank grass and weeds had taken the place; while for appellant there was proof the section crew cut the area to keep down this growth. In determining whether appellees were negligent as a matter of law, we must consider the evidence in its most favorable light to appellees and rejecting all evidence favorable to appellant. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139. In this view, even though towing the tractor added to the amount of care to be exercised by appellees, the question was one properly for the jury. Since appellees stopped, looked and listened for a train and thus exercised some care and caution in approaching the crossing, it was for the jury to say whether they were negligent under the circumstances. Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332; Texas & New Orleans R. R. Co. v. Day, 159 Tex. 101, 316 S.W.2d 402.

■■ Conceding, as we must, the physical facts were such that appellee D. L. Broadway could have seen the train after he had passed the high point of the ridge or bank of dirt to his right which would put him within 12 to 18 feet of the nearer rail of the track and the front end of his car some 6 or 7 feet closer, the further fact that, unexpectedly to him, his father applied the tractor brake causing the sudden pull or jerk and causing him to turn his head again to the left and rear was such distraction that under the circumstances the question was one for the jury to determine whether a reasonably prudent person would have acted as he did. Kirksey v. Southern Traction Co., supra. Appellant would exclude appellee D. L. Broadway from the benefit of this rule of "distraction" since it asserts such appellee's own negligence, including his admission he never saw the train before the impact, put

him in the place of peril, and cites Koock v. Goodnight, Tex.Civ.App., 71 S.W.2d 927 in support. Because the evidence on this issue is in conflict, and viewing it in the light most favorable to appellees, we cannot hold that appellee D. L. Broadway was negligent as a matter of law. In the cited case there was no dispute that appellee's wife's own negligence in forgetting her purse caused her to be hit by an oncoming car; whereas the instant case shows much conflict of testimony on the point. If that supporting appellees is believed, his negligence or not was for the jury; if that supporting appellant is believed, appellees were guilty of contributory negligence. The jury absolved appellees from contributory negligence and we sustain its findings. Galveston, H. & S. A. Ry. Co. v. Duty, Tex.Com. App., 277 S.W. 1057. For like reason we think the defense urged in failing to comply with Sec. 86(d) of Art. 6701d must fall. The court submitted the issue whether the train was "plainly visible" before D. L. Broadway reached a point 15 feet from the nearer rail and also submitted the issue whether the train was in "hazardous proximity" to the crossing before he had reached such point, to each of which the jury answered it was not. Appellant's first point is overruled.

The 2nd, 3rd and 4th points raise the questions of no evidence or alternatively insufficient evidence to support the findings of no negligence against appellees. The entire evidence has been weighed and so considering it, we conclude the points are without merit.

■ The 5th and 6th points attack findings that the train was not plainly visible and was not in hazardous proximity to the crossing because the findings are without support in the evidence and, alternatively, have insufficient support therein. We think these points turn upon the evidence discussed above with reference to the height of the bank and whatever weeds and grass that might have been growing thereon at at the time which may have obstructed appellees' view of the approaching train.

While the evidence supporting the findings is not overly convincing, we have concluded that the points should be overruled.

Special Issue No. 21 inquired whether the train was "plainly visible" before appellee D. L. Broadway reached a point 15 feet from the nearest rail of the railroad track, and Issue No. 22 inquired whether the train was in "hazardous proximity" to the crossing under the same circumstances. Instructions defining each of these terms accompanied the issues. The jury found that the train was neither plainly visible nor in hazardous proximity to the crossing. Special Issue No. 23 inquired whether D. L. Broadway failed to stop his car "within 50 feet but not less than 15 feet from the nearest rail of the railroad track." Since this issue was submitted, conditioned on the finding that the train was both plainly visible and in dangerous proximity to the crossing, it was not answered. Only if the jury answered Issue No. 23 in the negative, was the jury instructed to answer Special Issue No. 25 which inquired whether after so stopping, if he did, D. L. Broadway then proceeded when he could not do so safely. Objection was made to the submission of this issue because the trial court gave the following instruction accompanying it:

> "In connection with your answer to this Special Issue, you are instructed that D. L. (Lacy) Broadway proceeded when he could not do so safely, if, under all the surrounding facts and circumstances in evidence, there was such danger in proceeding that a reasonably prudent person would not have done so."

The objection urges that the statutory provision is a positive one, citing Texas & P. Ry. Co. v. Hasting, Tex.Civ.App., 282 S.W.2d 758, whereas the instruction given modified it by placing the common law test of "reasonably prudent person" thereon. Supporting this position, appellant requested a like issue without the instruction. Issue No. 25 would become material only in the event the jury determined that the train was both "plainly visible" and in "hazardous proximity". Missouri-Kansas-Texas R. R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 935. Since under the court's instruction the jury did not reach Issue No. 25, whether the quoted definition was correct became immaterial.

Appellant's 9th point complains of the failure of the trial court to grant its motion made at the beginning of trial to require appellees to refrain from questioning witnesses in regard to changes in conditions at the crossing subsequent to the accident, and thereafter refusing to declare a mistrial because of their counsel's continued questioning of witnesses regarding such matters. The original motion was a broad one and did not attempt to specify what the detail of testimony would likely be and in what respect objectionable. It was admitted in the motion that the section house has been removed since the accident and no point was made of that. Under certain circumstances it is entirely proper to show changes in the area. McCormick & Ray, Texas Evidence, Vol. 2, Sec. 1151, p. 42. Appellant introduced several pictures of the scene in evidence and questioned its witnesses about the house having been removed and whether certain trees shown in the pictures were standing at the time of the collision. This was the first testimony with reference to changed conditions at the crossing. Appellant's brief quotes certain testimony on cross-examination of its three witnesses Burke, Stewart and Slaughter, as well as short excerpts from appellees' witnesses Rogers, Muckleroy and Hamby to support its point. There was no objection made to any of appellees' questions at the time asked, but at the conclusion of cross-examination of Slaughter appellant moved for a mistrial because of the testimony of changed conditions. The motion was denied. While the courts hold that change of conditions or repairs made by a defendant is inadmissible upon the issue of his negligence, changes of an area may be shown in order to test a witness's credibility or powers of observation, or in connection

with pictures, to show whether a specific condition existed at the time of the accident. Motion for mistrial was again made and denied at the conclusion of Muckleroy's testimony. After appellant's development of changed conditions through its witnesses, Burke, Stewart and Slaughter, appellees offered their Exhibit No. 1 as well as certain others made on the same date which showed a burned area north of the road and east of the crossing. As Exhibit No. 1 was offered in evidence counsel for appellees stated that there was no intention to prove in connection with the picture "that the railroad company burned the thing off as a precautionary measure and the burning, if it was a burning, may well have occurred through the agencies of third parties in throwing a cigarette out * * * I don't know." It was proper to show, as was done, that the corner had been burned off after the accident. St. Louis, A. & T. Ry. Co. v. Johnston, 78 Tex. 536, 15 S.W. 104. If appellant had asked for an instruction to the jury not to consider the testimony complained of as evidence of negligence on the part of appellant, it doubtless would have been granted. The point is overruled.

While appellees' witness Muckleroy was on the stand he was asked about the circumstances of a "near-accident" he experienced in June, 1956 at the crossing. In describing the occurrence, he stated that on the occasion the whistle and bell on the train were not sounded. Appellant promptly objected to this testimony because the evidence of a "near-accident" was not admissible and because his testimony with respect to the whistle and bell was immaterial and irrelevant; and its 10th point complains of admission of the whistle-bell testimony. Appellees point out that pars. 43 and 44 of appellant's amended motion for new trial, upon which the 10th point is based, does not distinctly specify this error, but asserts error in proof of the near-accident. We think appellees' position is correct. Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407. ·

The 11th point asserts that the trial court erred in allowing appellees to make proof of two "near-accidents" at the crossing at other times and under other conditions substantially different from the collision in this case. The near-accidents happened in summers of 1955 and 1956. We think the conditions testified to were reasonably similar and the testimony of difficulty in seeing a train because of the weeds and grass were admissible to contradict testimony of appellant's witnesses who had testified that in their years of experience in using the crossing they never had difficulty in seeing approaching trains. The 11th point is without merit. The testimony of the two "near-accidents", however, was insufficient to charge appellant with notice that the crossing at the time presently involved was an extra-hazardous one and the 15th and 16th points are sustained. Karr v. Panhandle S. F. Ry. Co., 153 Tex. 25, 262 S.W.2d 925; T. & N. O. R. R. Co. v. Davis, Tex.Civ.App., 210 S.W.2d 195 by this court. However, on the record before us we overrule the 17th and 18th points questioning the evidence in support of the findings by the jury that failure to blow the whistle and ring the bell were each proximate causes of the collision, and, thus, sustaining the 15th and 16th points becomes immaterial.

The 12th point complains of failure of the trial court to quash the jury panel and grant a mistrial upon motion of appellant at the conclusion of the voir dire examination of the jury panel. This point contains 12 isolated excerpts of statements claimed to be prejudicial made to the panel by appellees' attorney. The entire voir dire examination is reported in the bill of exceptions. To attempt to discuss the different items here would unduly lengthen what is already a long opinion. We have, though, carefully examined each item of the complaint in the light of the briefs of the parties and the circumstances involved and have concluded that the action of the trial court in refusing appellant's request for mistrial was not error. The examina-

tion of the jury panel was long and tedious and evoked from the court the statement, "It looks like we are trying the case before we get to it." This examination is under his control, and his discretion in handling it was not abused. Missouri, K. & T. Ry. Co. of Texas v. Rogers, Tex.Civ.App., 141 S.W. 1011.

Appellees' petition prayed for damages in the sum of $38,440 for injuries in behalf of the father, D. H. Broadway, and for $75,000 in behalf of the son, D. L. Broadway.

### Findings of the Jury

(a) In favor of D. H. Broadway:

| | | |
|---|---|---|
| Damages to car | $ | 275.00 |
| Damages for personal injuries—past and future | | 29,100.00 |
| Past medical expense | | 225.00 |
| Future medical expense | | 4,680.00 |
| | | $34,280.00 |

(b) In favor of D. L. Broadway:

| | |
|---|---|
| Damages for personal injuries | 63,000.00 |
| Past medical expense | 205.00 |
| Future medical expense | 6,300.00 |
| | $69,505.00 |

Judgment was rendered for these amounts. However, as stated in the second paragraph, of this opinion, before the court overruled appellant's motion for new trial a remittitur was filed by the elder Broadway in the amount of $11,500 and by the younger Broadway of $27,000. Exception was taken by them to the requirement of the remittiturs and we are now faced with appellant's 13th and 14th points urging error of the trial court in refusing to grant a new trial because the verdict in favor of each appellee was so excessive as to indicate mistake, bias, prejudice or other improper motive, and with 1st and 2nd counterpoints by appellees assailing the requirement of remittiturs by the trial court as being unjustified.

That court was unquestionably right in holding that the verdict in behalf of each appellee was excessive. We think it was grossly excessive, but whether it is so excessive as, it alone, requires a reversal of the cause under the applicable rule stated in World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962, has been difficult to determine. We have been strongly inclined to reverse and remand this cause for another trial but we conclude that since no other showing indicates bias on the part of the jury, and the appeal is from the second trial of the case, the excessiveness may be cured by additional remittiturs. As the trial court erred only in requiring clearly insufficient remittiturs, we are authorized to require additional ones. Scott v. Gardner, Tex.Civ. App., 159 S.W.2d 121; H. J. Heinz Co. v. Ashley, Tex.Civ.App., 291 S.W.2d 427.

At the time of the trial the elder Broadway was 59 and the son 37 years of age. The son had separated from his wife, quit work in Houston and returned to his parent's home to loaf around awhile. At the time of the accident he was doing a little mechanical repair work for his father. His past employment record was very poor and he labeled himself a "shade tree mechanic", going from one job to another. On the occasion in question, the car he was driving was thrown into the ditch on his left side of the road and the front end hit against the adjacent bank; it was not turned over in this collision, but was upright when it came to rest. He was sitting with his hands on the steering wheel. He was temporarily dazed but shortly afterward got out of the car and stood around the scene talking to different persons for some time and then rode into a neighboring village with a deputy sheriff in order to get his car from his brother. It does not appear that he sustained any bruises because of the collision, had no broken bones and never consulted a doctor until some five weeks after the accident and after employment of counsel for this suit who advised him to go to Dr. E. P. McKinney. This doctor examined him

and saw him about once every two weeks until trial. He evidently never thought enough of the son's case to have X-rays made until just previous to the first trial of this case, counsel for appellees required that it be done, and the results of the X-rays were negative, in fact were not produced at the trial.

The son has complained of "low back" pain only as a result of the collision. His doctor testified that he probably sustained a strain and the ligaments or nerve roots in the low back were probably injured which caused him pain, and, ordinarily he ought to have recovered therefrom within 6 to 12 months.

The father was riding the tractor immediately before the impact and he stated he jumped off the tractor backwards and fell on his left shoulder and neck. He did not sustain any bruise or abrasion in this experience. At the first trial he made no complaint about his shoulder but he explained this by saying: "Didn't nobody ask me nothing about it." He has suffered from asthma for years and was unable to work often on account of it. He stayed at the scene of the accident walking around and talking to those about him for about an hour when his son came back and took him home. He stated that his neck has pained him most of the time since the accident but he consulted no doctor until after he and his son had employed counsel in this case and were sent to Dr. McKinney. The doctor treated him similarly to the treatment given his son. X-rays were made of him at the time they were made of his son and were of no significance. Dr. McKinney was the only medical witness. He testified that the future course of the injuries involved would be indefinite. He did not use the term "permanent". With some equivocation, however, he indicated that to him the terms meant about the same thing. He stated the X-rays showed no broken bones in either patient and there was no ruptured disc in the son's back. Both appellees

testified they had difficulty in working, even doing light work, since the accident. The total medical expense incurred in behalf of both appellees to date was less than $500 and this expense was made up largely of office calls every two weeks by each appellee. Neither the son nor the father could produce a copy of any income tax return which had been made by either in the past—in fact, the father, who ran a small repair shop, stated he never had any records of any kind in his business.

Appellant requested the right to have appellees examined by its doctor or in the alternative that appellees be examined by a doctor appointed by the trial judge. Appellees had the right to and did ignore these requests. But this is a factor that may be considered on the question before us. Austin & N. W. Ry. Co. v. Cluck, 97 Tex. 172, 77 S.W. 403, 64 L.R.A. 494. The excessiveness of the verdict shocks our sense of justice. Under the rule set forth in Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835, in the circumstances of this case, damages of $10,000, plus past medical expense of $205, plus that much more for medical expense in the future would be reasonable compensation for the son, and $5,000 damages to the father, plus damages to his car in the amount of $275 and past medical expense of $225 and a like amount for medical expense in the future would be reasonable compensation for the father.

Unless appellees, within two weeks after the filing of this judgment, file remittiturs to bring the amount of the judgment for each in conformity with the figures just stated, this case will be reversed and remanded for a new trial. If remittiturs are executed and filed with the clerk of this court within said time the judgment will be affirmed for the balance.

Affirmed conditionally.

Remittiturs having been filed this January 5, 1961, as suggested, our conditional affirmance is hereby adjudged to be final.