Donald A. HENRY et ux., Appellants,

v.

MRS. BAIRD'S BAKERIES, INC.,
Appellee.

No. 17261.

Court of Civil Appeals of Texas,
Fort Worth.

Dec. 24, 1971.

Rehearing Denied Jan. 21, 1972.

Crumley, Murphy & Shrull, and William M. Murphy, Fort Worth, for appellants.

Cantey, Hanger, Gooch, Cravens & Munn, and William L. Hughes, Jr., Fort Worth, for appellee.

## OPINION

LANGDON, Justice.

This is an action for personal injuries sustained by the appellant, Ethel M. Henry, alleging that she slipped and fell on a sidewalk adjacent to appellee's cake plant. The jury found that the bakery had negligently caused a foreign substance to be discharged onto the sidewalk which was a proximate cause of Mrs. Henry's fall and that such foreign substance had been on the sidewalk long enough to be discovered and removed by the appellee, and that its failure to remove it was negligence and a proximate cause. Further, the jury found that the appellant was not guilty of contributory negligence and fixed damages at $28,225.00. The trial court granted appellee's motion for judgment notwithstanding the verdict of the jury and ordered that the appellants take nothing.

The appellants' appeal from such judgment is based upon four (4) points of error. The first two points complain of the action of the court in granting appellee's motion for judgment non obstante veredicto and in overruling appellants' motion for judgment. The third and fourth points complain of the court's refusal to submit issues inquiring as to whether the appellee had a defective downspout and whether having same was negligence and a proximate cause and whether the condition of the downspout constituted a nuisance and a proximate cause.

By a single cross-point the appellee urges that the court erred in admitting the testimony of the witness, Bessie Lee Hendon.

We reverse and render.

The record in summary reflects that the appellant, Mrs. Henry, a doctor's assistant, slipped and fell in a foreign substance on the sidewalk beside appellee's cake factory on Terrell Street in Fort Worth, on March 14, 1969, while returning to her job. Weather conditions were misty. The sidewalk appeared to be wet with rain.

The wall of appellee's cake factory abuts the sidewalk on Terrell Street. Fastened to the wall are downspouts that carry water off the roof of the building. The downspouts were designed to drain the water off the roof and under the sidewalk and discharge it into Terrell Street.

The sidewalk was slick and slippery where appellant fell. Before she fell she had no grease on her. After she fell there was a greasy substance on her. The substance plaintiff got on herself when she fell was "greasy, black, smelly stuff".

Upon returning to her office appellant was seen by witness Hayes. She had black spots on her uniform that had a horrible odor. Witness Hayes went to the scene of the accident the next day and saw that the downspout was not "connected real good" and that there was "black looking stuff coming out of it on the sidewalk." She wiped up some of the substance off the sidewalk, and it looked and smelled like the same substance that was on appellant's uniform the previous day. She also saw holes in the downspout. The substance she found on the drainpipe and on the sidewalk was like a mixture of shortening you might find in the kitchen as opposed to a mud or clay.

Approximately 25,000 pounds of shortening a week and approximately five drums of oil a week are used in the cake factory. The head of the bakery's sanitation department said that the biggest part of his work is seeing to it that the grease is kept in the place where it is supposed to be and not getting all over things—a constant battle in his department.

Evidence produced by the appellant would support a finding that some of the greasy substances used in the plant, such as shortenings and oils, got onto the roof

of the factory and then were washed across the roof and into the downspout. If the downspout had no holes in it, these greasy substances would have washed out into the street under the sidewalk rather than on the surface of the sidewalk. The holes and loose-fitting joints in the downspout allowed some of the water and some of the greasy substances to be discharged onto the sidewalk where the appellant fell.

Evidence tracing the route of the greasy substances from the plant onto the sidewalk is as follows: Air vents lead from the different ovens and different work areas inside the plant, where the production is going on, and exhaust out through the roof. Exhaust fans help suck the hot air up from the factory onto the roof. The blades of these fans gather an accumulation of greasy residue. Interiors of the vent pipes accumulate grease and residue. Where the air vents blow out onto the roof they have a mesh wire screen which gets clogged up or gets a greasy coating on it as the hot air is blown out. The air vents have an elbow at the top so that they blow down towards the roof of the factory.

An expert witness who examined the roof and the factory's air exhaust system found that grease accumulates not only in the ducts but out on the area in front of the ducts where the air strikes the roof's surface. He observed some grease accumulated there, although the roofing material at that point had been replaced within a year before the witness had an opportunity to examine the roof. It is common to have grease on the roof of a bakery or cafe where you are exhausting any kind of cooking fumes.

The roof was quite unlevel. Under some weather conditions water falling on the northern part of the roof, where the exhaust fans and air vents were situated, would flow to the south side of the roof. Any small wind from the north would push it to the south where the downspout in question was situated. The water would

carry fats and oils along with it, carrying it anywhere the water would go.

Examination of the downspout by an expert witness revealed that the joints were broken loose and a hole was punched in the side of the downspout, the hole being 1-½″ or 2″ long. The hole had been in the downspout six to ten years.

Three days after appellant fell in the foreign substance on the sidewalk, her husband went to the scene. There he found leakage on the downspout and "quite a bit of grease on the downspout." He found a liquid running down the sidewalk "and it looked like water with a thin coat of oil in it."

During the month following the accident, appellant's husband returned to the scene on a rainy day and found water coming out of the downspout and "it had the appearance of oil in it." That day the husband took photographs which are in the record. The photos show water coming out of the hole in the downspout as it was on April 12, 1969, when the husband visited the scene.

An expert witness, Harry M. Bulbrook, a registered professional chemical engineer, with experience analyzing fatty materials for companies manufacturing vegetable oils and shortenings, analyzed the stains on appellant's uniform and made an inspection trip to the cake factory on April 24, 1970, where he picked up some samples to analyze.

He extracted the stain from the appellant's uniform. The material he extracted from the uniform was a fluorescent type of material, "which was of a greasy nature". Chemical tests on the unstained part of the same uniform did not show a fluorescence. Fluorescence is a characteristic of fatty and oil materials. One of the specimens the chemist obtained on his trip to the cake factory was from the vent on the roof. Using a series of gradually more sensitive tests, the chemist found in his laboratory that the materials scraped off

the vent stack was of practically the same composition as the material he had extracted from the appellant's uniform.

In his laboratory analysis the chemist found that the residues from all the sepcimens he picked up at the cake factory "fluoresced", which told him that all of them contained a fluorescent fatty oil of some sort.

The chemist found fatty oil on the uniform, and on the air vents that come out onto the roof, and on a specimen that he removed from the downspout.

Another witness, Mrs. Hendon, testified about slipping on the same sidewalk on a rainy day in March or April of 1967. The place Mrs. Hendon slipped was at the base of the second downspout from the west, the same place appellant fell down.

Right after witness Hendon slipped on the sidewalk, she looked at the downspout and saw something dripping out of it. The material dripping from the downspout was also on the sidewalk, and this material was slippery and slick. After that day witness Hendon would avoid walking through that area of sidewalk as she "didn't never trust that place" any more.

■ The occupier of real estate having a public sidewalk adjacent to it owes a duty to all citizens who might use the sidewalk. The duty is to avoid rendering the sidewalk unsafe for pedestrians. In Houston Belt & Terminal Ry. Co. v. Scheppelman, 235 S.W. 206, 210 (Tex.Com.App., 1921) the court said: "With reference to the contention that the city of Houston alone is liable, it is our view that no person, with or without the consent of the municipality, can actively render a highway or sidewalk of a municipality unsafe for public use, without, as a rule, being liable to a traveler who suffers injury thereby."

In Texas Co. v. Grant, 143 Tex. 145, 182 S.W.2d 996, 998 (1944) the court designated the manner by which "foreign substance on public sidewalk" cases should be submitted to the jury.

Additional support for the manner in which the instant case was submitted to the jury is found in another "sidewalk" case, Service Refining Co. v. Hutcherson, 179 S.W.2d 772, 775 (Waco Civ.App., 1944, writ ref., w. m.).

In the Service Refining Co. case, the pedestrian had slipped in oil on the sidewalk which the defendant had negligently caused to flow out of its service station. The defendant took the position that it owed no duty to keep the sidewalk in a reasonably safe condition; that such duty rested on the City of Waco. The Court recognized that as a general rule the duty does rest upon the City to maintain its sidewalks for the use of pedestrians, and added at page 774:

"But this rule of law, under the facts of this case, cannot be so applied as to excuse the appellant from the consequences of the affirmative negligent acts of which it stands convicted by the jury."

Another case illustrating the duty of care owed by an adjacent landowner to persons using streets and sidewalks is Skelly Oil Co. v. Johnston, 151 S.W.2d 863 (Amarillo Tex.Civ.App., 1941, writ ref.).

In Skelly the court, in speaking of the duty the oil company owed to the passerby, Johnston, said:

"It is true that the jury did not find, nor does the evidence show, that appellant operated its cooling towers in a careless manner, nor that they were out of repair or constructed in a manner different from what they should have been. But it is a general rule of law that the owner or occupant of premises abutting upon a highway, road or street must exercise reasonable care not to jeopardize or endanger the safety of persons lawfully using the highway, road or street as a means of passage or travel, and that he will be liable for any injury that proximately results from his wrongful acts in that respect. He is under the duty so to use and manage his premises as not to inflict injury upon those who, in the exercise of their lawful right, may

be using the highway, road or street as a means of passage or travel. Gulf, C. & S. F. R. Co. v. Oakes, 94 Tex. 155, 58 S.W. 999, 52 L.R.A. 293, 86 Am.St.Rep. 835; Southwestern Telegraph & Telephone Co. v. Sheppard, Tex.Civ.App., 189 S.W. 799; Beck v. Ferd Heim Brewing Co., 167 Mo. 195, 66 S.W. 928; Klepper v. Seymour House Corp., 246 N.Y. 85, 158 N.E. 29, 62 A.L.R. 955; Stephens' Adm'r v. Deickman, 158 Ky. 337, 339, 164 S.W. 931, 934, 51 L.R.A.,N.S., 309."

In Skelly the Court refers to and quotes from the Kentucky case of Stephens' Adm'r v. Deickman, 158 Ky. 337, 164 S.W. 931, 51 L.R.A.,N.S., 309, which involved downspouts which were designed to empty water from the roof of a building.

The authorities above cited illustrate that there is a definite duty owed by an adjacent land occupier, such as the appellee here, to pedestrians using the sidewalk and that the instant case was submitted to the jury in a manner consistent with the precedents established in other "foreign substance—sidewalk—pedestrian" cases.

Three separate theories upon which a plaintiff, with proper proof, may recover in a slip and fall case were set out by Justice Norvell in 1949 when he was on the San Antonio Court of Civil Appeals. They are:

"1. That the defendant put the foreign substance upon the floor, or,

"2. That the defendant knew the foreign substance was on the floor and wilfully or negligently failed to remove it, or

"3. That the foreign substance had been upon the floor for such a period of time that it would have been discovered and removed by the defendant, had the defendant exercised ordinary care." H. E. Butt Grocery Co. v. Johnson, 226 S.W.2d 501, 502 (Tex.Civ.App.).

█ In the case at bar the appellants relied on the first and third of the above theories and obtained favorable jury find-ings on each of them. The jury found that (1) there was a foreign substance on the sidewalk; (2) the existence of the foreign substance on the sidewalk created a dangerous condition; and (3) appellant slipped on the foreign substance.

The jury further found the facts necessary to establish liability on the part of the bakery under the first theory, i. e., that the bakery caused a foreign substance to be discharged onto the sidewalk, and that the discharge of the foreign substance onto the sidewalk was negligence, and that such negligence was a proximate cause of appellant's fall.

The jury also found the facts necessary to establish liability on the part of the bakery under the third theory, i. e., that the foreign substance had been on the sidewalk for a sufficient period of time for it to have been discovered and removed by the appellee bakery, and that the failure of the bakery to remove such foreign substance was negligence, and that such negligence was a proximate cause of appellant's fall.

Favorable findings of the jury under either the first or the third theory would have entitled appellant to a judgment and it found both sets of Special Issues favorable to appellant and against appellee.

Since the learned trial court overruled the appellant's motion for judgment based upon the jury's verdict and sustained the appellee's motion for judgment non obstante veredicto, it becomes the duty of this Court to determine whether or not there is any evidence to support the jury findings on either of these two sets of special issues.

The essential facts have heretofore been set forth. The jury is permitted to draw reasonable inferences and deductions from them. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958).

We find and hold that there is ample evidence in this case from which the jury could reasonably draw the inference that by permitting a hole to exist in its down-

spout the appellee-bakery caused the foreign substance, grease, which it had emitted onto its roof, to be washed onto the sidewalk with normal rainwater.

In resolving the question of whether or not it was proper for the trial court to sustain appellee's motion for judgment non obstante veredicto, this Court must follow the guidelines established by our Supreme Court.

"The jury, not the court, is the fact finding body. The court is never permitted to substitute its findings and conclusions for that of the jury." Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792, 796 (1951).

"[The appellate court] must regard the evidence contained in the record in its most favorable light for [the plaintiff]." McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442, 445 (1941). See also Robertson v. Robertson, 159 Tex. 567, 323 S.W.2d 938 (Tex.Sup., 1959); Thoreson v. Thompson, 431 S.W.2d 341 (Tex.Sup., 1968); and Tenneco Oil Company v. Padre Drilling Company, 453 S.W.2d 814, 817 (Tex.Sup., 1970).

"These plaintiffs . . . were only required to convince the jury by a fair preponderance of the evidence that the accident resulted from the negligence of the defendant." Burlington-Rock Island R. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723, 726 (Tex.Sup., 1943).

"To sustain the action of the trial court . . . it must be determined that there is no evidence on which the jury could have made the findings relied upon." Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547, 550 (1962).

"This court should never set aside a jury verdict merely because the jury could have drawn different inferences or conclusions. The jury in this case has considered all the facts admitted before it and has, by its answers, selected from the conflicting evidence and conflicting inferences that which it considered most reasonable." Benoit v.

Wilson, 150 Tex. 273, 239 S.W.2d 792, 797 (1951). See also Gulf, Colorado & Santa Fe Railway Company v. Deen, 158 Tex. 466, 312 S.W.2d 933, 937 (1958); Stanley v. Southern Pacific Company, 466 S.W.2d 548, 550 (Tex.Sup., 1971); Miller v. Fleming, 149 Tex. 368, 233 S.W.2d 571, 575 (1950); Weatherly v. Billington, 457 S.W.2d 112 (Fort Worth, Tex.Civ.App., 1970, no writ hist.); McCormick and Ray, Texas Law of Evidence, Vol. 2, Sec. 1481; and J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698 (Tex.Com.App., 1940).

In considering the facts of this case in the light of the guidelines established by the authorities above cited we are of the opinion and hold that there is ample evidence in the record to support the answers of the jury to the special issues in support of the appellants' cause of action on both the first and third theories described by Judge Norvell in H. E. Butt Grocery Co. v. Johnson, supra.

■ We further find and hold that there is ample evidence in this record to support the damages found by the jury in answering Special Issues 12 and 13. Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.Sup., 1966) and Otis Elevator Company v. Wood, 436 S.W.2d 324 (Tex.Sup., 1968).

In view of what we have said to this point we can see no necessity in discussing appellants' points three and four and therefore will not do so.

■ This brings us to a discussion of the appellee's cross-point complaining of the action of the trial court in admitting the testimony of Bessie Lee Hendon. In our opinion the testimony of Bessie Hendon was correctly admitted for consideration by the jury because:

(1) Evidence of "similar conditions" connected in some "special way" with the condition in question, or conditions which occur by means of the same "instrumentality" is probative on the issue of the existence of the condition in question.

(2) Her testimony was in the nature of impeachment of the plant manager, Mr. Walloch.

(3) Her fall was well within the time boundaries established by the Courts to make it pertinent to the issue of the fall of appellant.

Evidence of other accidents, near accidents or related similar events has long been recognized as probative evidence in Texas courts, provided an adequate predicate is established. Gifford-Hill & Co., v. Henderson, 81 S.W.2d 274 (Texarkana Tex.Civ.App., 1935, writ dism.); Texas Power & Light Co. v. Bristow, 213 S.W. 702 (Tex.Civ.App., 1919, writ ref.). Recently the Supreme Court observed that "evidence of other falls attributable to the same condition, . . . would be probative, although not conclusive, on the question." Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752 (Tex.Sup., 1970). The Supreme Court in justification of a holding that the crossing in question was not "extra-hazardous" has said it as "noteworthy" that there was "no testimony whatever (of) . . . any accident or near-accident at the crossing . . . in question" under similar conditions prior to the accident out of which suit arose. Karr v. Panhandle & Santa Fe Ry. Co., 153 Tex. 25, 262 S.W.2d 925, 932 (1953).

■ The principle of the probative value of such prior occurrences was recognized as early as 1889. Shelley v. City of Austin, 74 Tex. 608, 12 S.W. 753 (Tex.Sup., 1889). It was confirmed as a "well established rule" in 1927 that evidence of results flowing from a given set of facts is admissible where similar conditions, surroundings and issues are involved. City of Marlin v. Criswell, 293 S.W. 910 (Waco Tex.Civ.App., 1927, error refused). In Gulf, C. & S. F. Ry. Co. v. Downs, 70 S.W.2d 318 (Dallas Tex.Civ.App., 1934, error refused), evidence was admitted that fire-packed cotton bales burn from the inside out. Such evidence is admissible upon the establishment of the following:

(1) Predicate of "similar," or "reasonably similar" conditions. Texas and New Orleans Railroad Co. v. Broadway, 345 S.W.2d 814 (Beaumont Tex.Civ.App., 1961, no writ hist.); Missouri-Kansas-Texas Railroad Co. of Texas v. McFerrin, 279 S.W.2d 410 (Austin Tex.Civ.App., 1955, reversed on other grounds, 156 Tex. 69, 291 S.W.2d 931).

(2) Connection of the conditions in some "special way". Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017 (1950).

(3) That the incidents occurred by means of the same instrumentality. Reynolds & Huff v. White, 378 S.W.2d 923 (Tyler Tex.Civ.App., 1964, no writ hist.).

With the establishment of any such predicate, the evidence is probative on:

(1) The existence of a dangerous condition or instrumentality, Ft. Worth & Denver City Ry. Co. v. Looney, 241 S.W.2d 322 (Fort Worth Tex.Civ.App., 1951, ref., n. r. e.); Safeway Stores Incorporated v. Bozeman, 394 S.W.2d 532 (Tyler Tex.Civ. App., 1965, writ ref., n. r. e.); Brockman v. J. Weingarten, 115 S.W.2d 753 (Galveston Tex.Civ.App., 1938, affirmed at 134 Tex. 451, 135 S.W.2d 698).

(2) That some similar event could have happened. Missouri-Kansas-Texas Railroad Co. of Texas v. Crouch, 273 S.W.2d 466 (Fort Worth Tex.Civ.App., 1954, no writ hist.).

(3) The question of notice to the defendant of the existence of an alleged dangerous condition, Ft. Worth & D. C. Ry. Co. v. Measles, 81 Tex. 474, 17 S.W. 124, (1891); Galveston Theatres v. Larsen, 124 S.W.2d 936 (Galveston Tex.Civ.App., 1939, no writ hist.); and Brockman, supra. See also McCormick and Ray, Texas Law of Evidence, 2nd Edition, Sec. 1525, page 373 et seq.

There is no requirement that the conditions of the prior accident or occurrence be identical, the jury being well able to evalu-

ate such minor variations as may exist, along with the other elements of the case. In McFerrin, supra, "similar" means simply "resembling or having a general likeness."

The testimony of Hendon is further admissible on the ground of impeaching the testimony of an adverse party. "Near accident" testimony has been admitted to contradict a railroad company witness that in his long years of using the crossing in question he had never had difficulty seeing approaching trains. Texas and New Orleans Railroad Co. v. Broadway, supra. See also Pound v. Popular Dry Goods Co., 139 S.W.2d 341 (El Paso Tex.Civ.App., 1940, no writ hist.). In the instant case, Bessie Hendon's testimony contradicts that of the general manager of the cake division of Mrs. Baird's Bakery, Mr. Walloch, who "got so good" at his inspecting of the roof, grounds and plant that inspection tours were cut from twice to once a month but who "never in (his) life" saw any grease on the roof, "never noticed anything too much wrong with the downspout" except a "nail hole" and a patched place on it and some dents in it and had "never seen (grease or a grease-like substance) on any sidewalk around our building."

A final element to be examined on this point is the time lapse between the experience of Mrs. Hendon and that of the appellant's accident. Out of state authority has noted that remoteness of the occurrence may be unimportant where it is shown that conditions have not changed, Otis Elevator Co. v. Luck, 202 F. 452 (9th Cir., 1913) and that remoteness in any event goes to the weight of the evidence and not to its admissibility. Texas courts look at the time lapse, and the proffered Hendon experience is well within the established boundaries. Admission of the evidence of similar occurrences, near accidents or events which predated the occurrence in suit by 18 months, Measles, supra, one year, Galveston Theatres, supra, and as long as 27 months, Broadway, supra, has been affirmed.

In sustaining appellants' first two points and in overruling the cross-point of the appellee which we do on the basis of the authorities above cited as applied to the facts of this case, we are required to and do reverse the judgment of the learned trial court and here render judgment for the appellants, based upon the jury verdict.

Reversed and rendered.